

**ORDERED in the Southern District of Florida on May 17, 2013.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                          Case No. 13-20853-PGH
                                                                Chapter 11
TLO, LLC,

       Debtor.
_____/

### ORDER GRANTING ON AN INTERIM BASIS DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING POST-PETITION FINANCING AND SETTING FINAL HEARING

THIS CAUSE came before the Court for hearing on May 14, 2013, in West Palm Beach, Florida upon the Debtor-in-Possession's, TLO, LLC (the "Debtor") Emergency Motion For the Entry of an Order Authorizing Post-petition Financing [D.E. #15] (the "Motion"). The Motion seeks approval of post-petition financing (the "D.I.P. Credit Facility") from the Debtor's current co-Chief Executive Officers, Eliza Desiree Asher and Caroline Asher Yoost, the daughters of the deceased founder of the Debtor, Hank Asher. Ms. Asher and Ms. Yoost or their Irrevocable Trusts (the "Principals") have each agreed to loan $1,000,000 to the Debtor immediately,

payable interest only at 9% per annum, which will be secured by life insurance proceeds of Mr. Asher payable to the Debtor, along with all other assets of the Debtor. Technology Investors, Inc., the Debtor's secured lender, has agreed to subordinate its liens to the liens granted the Principals described herein. These liens will be senior to Technology Investors, Inc.'s lien.

The Court, having considered the Motion, the record made by the Debtor at the interim hearing, having heard argument of counsel and being fully advised in the premises, good cause having been shown and proper notice having been given, it is

ORDERED AND ADJUDGED as follows:

1. *Jurisdiction.* This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice.* The notice given by Debtor of the Motion and interim hearing has been given pursuant to Bankruptcy Rules 4001 (b) and 4001 (c) to creditors identified on the Debtor's list of twenty (20) largest unsecured creditors, all entities which may have an interest in cash collateral, counsel for Lender, counsel for the United States Trustee by U.S. Mail or Notice of Electronic Filing.

3. *Findings regarding the financing.*

(a) The Debtor has an immediate need to obtain financing to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs. The access of the Debtor to sufficient working capital and liquidity through the D.I.P. Credit Facility is vital to the preservations and maintenance of the going concern value of the Debtor and to a successful reorganization of the Debtor.

(b)     The Debtor was unable to obtain financing on more favorable terms from sources other than the Principals and the D.I.P. Credit Facility and was unable to obtain adequate unsecured credit available under §503(b)(1) of the Bankruptcy Code as an administrative expense.

(c)     Based upon the record presented to the Court by the Debtor, it appears that the terms of the D.I.P. Credit Facility are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty and constitute reasonably equivalent value and fair consideration.

(d)     The D.I.P. Credit Facility with the Principals has been negotiated in good faith and at arms length with the Debtor and all of the Debtor's obligations and indebtedness arising under, in respect of, or connection with the D.I.P. Credit Facility, including without limitation, all extension of credit thereunder, shall have been deemed to have been extended by the Principals in good faith, as the term is used in §364(e) of the Bankruptcy Code and in express reliance upon the protections offered by §364(e) of the Bankruptcy Code and shall be entitled to the full protection of §364(e) of the Bankruptcy Code in the event this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(e)     The Debtor has requested the entry of this Order pursuant to Bankruptcy Rules 4001(b) and 4001(c). Absent the granting of the relief provided by this Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the D.I.P. Credit Facility in accordance with this Order and any documents executed in conjunction herewith is in the best interest of the Debtor's estate.

4. *Authorization of the D.I.P. Credit Facility and related documents.*

(a) The Debtor is hereby authorized to enter into the D.I.P. Credit Facility and execute and deliver all of the documents, instruments, security agreements and financing statements in connection therewith. The Debtor shall use the proceeds of the D.I.P. Credit Facility for all purposes permitted under the financing documents, including, without limitation, working capital, provided all such expenditures of financing proceeds shall be in accordance with the budget attached hereto as Exhibit "A".

(b) The Debtor is further authorized to pay all fees that may be reasonably required or necessary for the Debtor's performance of its obligations under the D.I.P. Credit Facility.

(c) The execution and delivery of the Loan Documents implementing the D.I.P. Credit Facility shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the loan documents and this Order. No obligation, payment, transfer or grant of security under the Loan Documents or this Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation §502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment, or counterclaim.

5. *Superpriority claims.*

Pursuant to §364(c)(1) of the Bankruptcy Code, all obligations due to the Principals under the D.I.P. Credit Facility, the loan documents and this Order shall constitute allowed claims and expenses against the Debtor with priority over any and all administrative expenses, diminution claims (including all adequate protection obligations), and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation,

all administrative expenses of the kind specified in §§503(b) and 507(b) of the Bankruptcy Code and over any and all administrative expenses or other claims arising under §§105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507 (b), 726, 1113 and 1114 of the Bankruptcy Code (the "Superpriority Claims"), which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof.  Notwithstanding the foregoing, the Superpriority Claims shall not have priority over the Debtor's continuing obligations to Wells Fargo in connection with: (i) any automated clearing house services provided by Wells Fargo to the Debtor; (ii) the Wells One Commercial Credit Card Agreement with a maximum limit of $200,000; or (iii) the agreements governing any of the Debtor's accounts at Wells Fargo, including, but not limited to, Account Number *********5093 (commonly known as the "TLO, LLC Collateral Account") (collectively, the foregoing obligations of the Debtor to Wells Fargo are referred to as the "Wells Fargo Obligations").

6. *Liens and security interests.* As security for all obligations due to the Principals under the D.I.P. Credit Facility, the loan documents and this Order, perfected upon the date of this Order and without the necessity of the execution by the Debtor or recordation or filing of mortgages, security agreements, control agreements, pledge agreements, financing statements or similar documents, the following security interests and liens are hereby granted to the Principals:

(a) Pursuant to §364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtor, whether existing on the petition date or thereafter acquired, that is not subject to valid, perfected and non-avoidable liens,[1] including without limitation:

---

[1] Wells Fargo holds a valid, perfected and non-avoidable lien on the TLO, LLC Collateral Account as security for the Wells Fargo Obligations.

(i)  all accounts (including the Debtor's right, title and interest in that certain life insurance Policy No. L8725267-A issued by Pruco Life Insurance Company [a Prudential Financial company], as insurer, in the amount of $40,000,000 on the life of Hank Asher, as the insured (the "Asher Policy")), including all credit enhancements therefor;

(ii)  all contract rights, including, without limitation, all rights of the Borrower as either lessor or lessee under any lease or rental agreement of real or personal property, including, without limitation, each lease;

(iii)  all chattel paper;

(iv)  all documents;

(v)  all instruments;

(vi)  all supporting obligations and letter-of-credit rights;

(vii)  all general intangibles (including, without limitation, payment intangibles, intercompany accounts, software and the Borrower's right, title, interest, claim in chose in action in and against the insurer regarding the Asher Policy);

(viii)  all inventory and other goods;

(ix)  all equipment and fixtures;

(x)  all investment property;

(xi)  all money, cash, cash equivalents, securities, and other property of any kind;

(xii)  the operating accounts and all other deposit accounts and all other credits and balances with and other claims against any financial institution;

(xiii)  all notes, and all documents of title;

(xiv)  all books, records, and other property related to or referring to any of the foregoing, including, without limitation, books, records, account ledgers, data processing records, computer software and other property, and general intangibles at any time evidencing or relating to any of the foregoing;

(xv)  all commercial tort claims;

(xvi)  all other personal property of the Debtor, excluding any avoidance actions under Chapter 5 of the Bankruptcy Code and recoveries therefrom; and

(xviii) all accessions to, substitutions for, and replacements, products, and proceeds of any of the foregoing, including, but not limited to, proceeds of any insurance policies (including the Asher Policy), claims against third parties, and condemnation or requisition payments with respect to all or any of the foregoing.

(b) Pursuant to §364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest and lien upon all pre- and post-petition property of the Debtor (other than the property described in clause (a) of this paragraph 6), and the proceeds thereof, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence prior to the petition date or to valid and unavoidable liens in existence immediately prior to the petition date that are perfected subsequent to the petition date as permitted by §546(b) of the Bankruptcy Code, provided: the Principals shall not be granted a post-petition security interest and lien on the TLO, LLC Collateral Account.

(c) All of the property, including proceeds, subject to the security interests and liens provided to the Principals described in (a) and (b) above is hereafter referred to as the "Collateral".

7. *Cash collateral.* All proceeds of any of the Collateral shall constitute cash collateral within the meaning of §363(a) of the Bankruptcy Code.

8. *Default by Debtor.* If any event of default occurs pursuant to the D.I.P. Credit Facility or the loan documents or any violation of this Order by the Debtor occurs, (i) the Principals shall have no further obligation to provide financing under the D.I.P. Credit Facility, the loan documents or this Order, (ii) at the discretion of the Principals, any authorization to use cash collateral shall terminate, (iii) the Principals shall, without providing prior notice thereof, charge interest at the default rate as set forth in the loan documents, (iv) the principals shall be entitled to relief from the automatic stay of 11 U.S.C. §362, upon motion and hearing, for

purposes of pursuing any and all remedies with respect to the Collateral pursuant to the Uniform Commercial Code, the loan documents or this Order. In pursuing such rights and remedies, the Principals shall not be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the Collateral provided to them under the D.I.P. Credit Facility or this Order.

9.    *Perfection of security interest and liens.*

(a)    The Principals are hereby authorized, but not required, to obtain, file or record financing statements, trademark filings, patent filings, copyright filings, mortgages, notice of lien, landlord waivers, bailee waivers, warehouseman waivers, other waivers or consents, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the Principals, in their sole discretion, chose to file such financial statements, trademark filings, patent filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interested granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at any time and on the date of the entry of this Order. To the extent necessary, the automatic stay of 11 U.S.C. §362 is hereby modified to permit any and all filings or recordations by the Principals which are permitted pursuant to this Order.

(b)    A certified copy of this Order may, in the discretion of the Principals, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

10.    *Preservation or rights granted under this Order.*

(a) Except as otherwise provided in this order, no Claim or lien having a priority superior to or *pari passu* with those granted by this Order, under the D.I.P. Credit Facility or under the loan documents shall be granted or allowed while any obligations are due to the Principals with respect to the D.I.P. Credit Facility and all liens and security interests granted to the Principals shall not be (i) subject to or junior to any lien or security interest that is avoided or preserved for the benefit of the Debtor's estate under §551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any lien or security interest, whether under §364(d) of the Bankruptcy Code or otherwise.

(b) Unless all obligations due to the Principals under the D.I.P. Credit Facility, the loan documents and this Order have been paid in full, the Debtor shall not seek, and it shall constitute an event of default and a termination of the right to use cash collateral if the Debtor seeks, or if there is entered (i) any modifications or extensions of this Order without the prior written consent of the Principals and no such consent shall be employed by any other action, inaction or acquiescence of the Principals or (ii) an order dismissing or converting this case. If an order dismissing this case under §1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with §§101 and 349 of the Bankruptcy Code), that (i) the Superpriority Claims, security interests and liens granted to the Principals pursuant to this Order, the D.I.P. Credit Facility and the loan documents shall continue in full force and effect and shall maintain their priorities in accordance with this Order until all obligations due to the Principals shall have been paid and satisfied in full and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the claims, liens and security interests referred to in (i) above.

(c) If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not effect (i) the validity of any obligations due to the Principals pursuant to the D.I.P. Credit Facility, the loan documents or this Order or (ii) the validity or enforceability of any lien, security interest or priority authorized or created by this Order, the D.I.P. Credit Facility or the loan documents. Notwithstanding any such reversal, modification, vacation or stay, any obligation due to the principals under the D.I.P. Credit Facility, the loan documents or this Order prior to actual written notice of the effective date of any reversal, modification, vacation or stay, shall be governed in all respects by the original provisions of this Order, the D.I.P. Credit Facility and the loan documents and the Principals shall be entitled to all rights, remedies, privileges and benefits granted in §364(e) of the Bankruptcy Code, this Order, the D.I.P. Credit Facility and the loan documents with respect to all obligations due to the Principals.

(d) All of the Superpriority Claims and expenses provided to the Principals pursuant to this Order, the D.I.P. Credit Facility and the loan documents shall survive, and not be modified, impaired or discharged by the entry of an order converting this case to a case under chapter 7, or dismissing this case. The terms and provisions of this Order, the D.I.P. Credit Facility and the loan documents shall continue in this case or in any superseding chapter 7 case under the Bankruptcy Code and all security interests, liens, Superpriority Claims and expenses, and all other rights and remedies of the Principals shall continue in full force and effect until all such obligations have been paid in full.

(e) To the extent the Debtor repays the Principals with proceeds of the Asher Policy, Technology Investors, Inc. shall subrogate to the Principals Liens granted herein to the extent of the proceeds of the Asher Policy are used to satisfy the DIP Credit Facility.

11. *Limitation on use of financing proceeds and collateral.* Notwithstanding anything herein or any order by this Court to the contrary, no proceeds of the D.I.P. Credit Facility or the Collateral provided to the Principals hereunder and no cash collateral may be used to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due to the Principals pre- or post-petition or the liens or security interests granted under this Order, the D.I.P. Credit Facility or the loan documents, (ii) assert any claims or defenses or causes of action against the Principals or their representatives, attorneys or advisors, (iii) prevent, hinder or otherwise delay the Principals enforcement or realization on any of the Collateral, including cash collateral, (iv) seek to modify any of the rights granted to the Principals hereunder, under the D.I.P. Credit Facility or under the loan documents, or (v) pay any amount on account of any claims arising prior to the petition date unless such payments are permitted and approved by order of this Court or pursuant to the D.I.P. Credit Facility.

12. *Order governs.* In the event of any inconsistency between the provisions of this Order, the D.I.P. Credit Facility or the loan documents, the provisions of this Order shall govern.

13. *Binding effect, successors and assigns.* The provisions of this Order, the D.I.P. Credit Facility, and the loan documents, including all findings herein, shall be binding upon all parties in interest in this case, including, without limitation, any Committee and the Debtor and its respective successors and assigns including nay chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of the Principals and their respective successors and assigns, provided, however, that the Principals shall have no obligation to extend any financing or any chapter 11 or chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.

14.     *Final Hearing.*  The Final Hearing is scheduled for **June 11, 2013, at 9:30 a.m.** before this Court at 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, Florida 33401.

15.     *Notice of Final Hearing.*  The Debtor shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing), to the parties having been given notice of the interim hearing, and to any other party that has filed a request for notices this this Court and to any Committee after the same has been appointed, or Committee counsel, if the same has been appointed.   Any party in interest objecting to the relief sought at the final hearing shall serve and file written objections, which objections shall be served upon (a) Robert C. Furr, One Boca Place, Suite 337W, 2255 Glades Road, Boca Raton, FL  33431 and (b)  Heidi A. Feinman, Esquire, Office of the U.S. Trustee, 51 SW First Avenue, Room 1204, Miami, FL 33130; and (c) counsel for any Committee appointed in this case on or before **June 6, 2013**, by a method so that the objection is received by such date.

16.     The relief granted herein is without prejudice to the rights of creditors and other parties in interest to object to or otherwise contest the lien or claim of Technology Investors, Inc.

###

Submitted by:

Alvin S. Goldstein, Esquire
Furr and Cohen, P.A.
Attorneys for Debtor
One Boca Place, Suite 337W
2255 Glades Road
Boca Raton, FL 33431
(561)395-0500
(561)338-7532 fax
e-mail: agoldstein@furrcohen.com

Attorney Alvin S. Goldstein is directed to serve a copy of this Order on all parties listed below and file a Certificate of Service with the Court.

By Notice of Electronic Filing:

- Barry S Balmuth    balmuthlaw@alum.emory.edu, assistantbalmuthlaw@gmail.com
- Alan R Barbee    ecf@marcumllp.com
- Joseph D Frank    jfrank@fgllp.com, ccarpenter@fgllp.com;rheiligman@fgllp.com
- Robert C Furr    bnasralla@furrcohen.com
- Alvin S. Goldstein    mmitchell@furrcohen.com
- Todd C Meyers    tmeyers@kilpatricktownsend.com, rrahman@kilpatricktownsend.com;lcanty@kilpatricktownsend.com;mlangford@kilpatricktownsend.com;mwilliams@kilpatricktownsend.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- John R Thomas    jthomas@smithhulsey.com
- Scott A. Underwood    scott.underwood@fowlerwhite.com, denise.strand@fowlerwhite.com

By U.S. Mail:

The 20 largest unsecured creditors and appearances

H:\LIBRARY\BANKRUPTCY\TLO LLC 13-083\PLD\Order Granting M4 Post-Petition Financing.doc

**TLO, LLC**
**Cash Collateral Budget**
**May - July 2013**

|  | May-13 | Jun-13 | Jul-13 |
|---|---:|---:|---:|
| **Beginning Cash Balance**[1] | 830,528 | 461,848 | (340,174) |
| **Projected Revenue** | 2,245,007 | 2,334,808 | 2,428,200 |
| **Projected Cash Receipts** | 2,092,390 | 2,176,086 | 2,263,129 |
| **Data Expense (COGS)**[2] | 225,000 | 1,083,150 | 1,429,400 |
| **Gross Profit** | 1,867,390 | 1,092,936 | 833,729 |
| **Operating Expenses** | | | |
| *Selling* | | | |
| Payroll & Payroll Taxes[3] | 379,216 | 232,463 | 441,905 |
| Advertising & Marketing | 2,500 | 2,500 | 2,500 |
| Bank Fees | 16,509 | 17,169 | 17,856 |
| Credentialing Fees | 125,000 | 100,000 | 75,000 |
| Trade Shows | 15,000 | 2,000 | 15,000 |
| Travel & Entertainment | 17,785 | 18,497 | 19,237 |
| NSF/CC reversals | 8,370 | 8,704 | 9,053 |
| Other Selling Expenses | 0 | 0 | 0 |
| **Total Selling** | 564,380 | 381,333 | 580,550 |
| **General & Administrative** | | | |
| Payroll & Payroll Taxes[3] | 809,940 | 566,874 | 598,648 |
| Bank Fees | 8,000 | 8,000 | 8,100 |
| Benefits | 110,000 | 190,000 | 100,000 |
| Computer Expense | 10,000 | 25,000 | 25,000 |
| Communication Expenses | 21,500 | 21,500 | 21,500 |
| Dues and Subscriptions | 1,250 | 1,250 | 1,250 |
| Equipment Lease | 82,000 | 82,000 | 82,000 |
| Insurance | 9,500 | 9,500 | 9,500 |
| Office Expenses | 2,500 | 2,500 | 2,600 |
| Professional Development | 500 | 500 | 500 |
| Postage & Shipping | 1,000 | 1,000 | 1,000 |
| Professional Fees | 100,000 | 50,000 | 50,000 |
| Rent Expense | 238,000 | 238,000 | 238,000 |
| Repairs, Maintenance & Cleaning | 4,500 | 4,500 | 4,500 |
| Taxes & Licenses | 500 | 500 | 500 |
| Travel & Entertainment | 12,500 | 12,500 | 12,500 |
| Utilities | 110,000 | 110,000 | 110,000 |
| Other General & Administrative Expenses | - | 40,000 | 40,000 |
| **Total General & Administrative** | 1,521,690 | 1,363,624 | 1,305,598 |
| **Total Operating Expenses** | 2,086,070 | 1,744,957 | 1,886,148 |
| **Non Operating Expenses** | | | |
| US Trustee Fee Expense | - | - | 13,000 |
| Bankruptcy Professionals | 150,000 | 150,000 | 150,000 |
| Other Expense | - | - | - |
| **Total Other Expenses** | 150,000 | 150,000 | 163,000 |
| **Net Cash Flow** | (368,680) | (802,022) | (1,215,419) |
| **Ending Cash Balance** | 461,848 | (340,174) | (1,555,593) |

[1] Cash Balance does not include the Wells Fargo Collateral Account as those funds are not available for operations.
[2] Data costs incurred in July will be included in subsequent cash collateral budget for payment in August.



STRICTLY CONFIDENTIAL