

**ORDERED in the Southern District of Florida on May 17, 2013.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                    $13-20853-$ ~~13-20846~~PGH
                                          Case No. ~~13-20846~~PGH
                                          Chapter 11

TLO, LLC,

Debtor.
_____/

## INTERIM ORDER (I) AUTHORIZING DEBTOR TO HONOR
## AND/OR PAY PREPETITION WAGE AND BENEFIT OBLIGATIONS;
## AND (II) DIRECTING BANKS TO HONOR RELATED PREPETITION TRANSFERS

**THIS MATTER** came before the Court on the 14th day of May, 2013 in West Palm

Beach, Florida, upon the emergency motion (the "Motion") [D.E. #6] filed by the above-

captioned debtor and debtor in possession (the "Debtor") for entry of interim and final orders (i)

authorizing, but not directing, the Debtor to honor and/or pay with respect to (a) Salaried and

Hourly Employees[1] prepetition wages, salaries, commissions, bonuses and other compensation,

and (b) Employees certain prepetition benefits including, but not ~~but~~ not limited to, claims for

_____

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

vacation, sick leave, unpaid reimbursable expenses, if any, and to preserve all medical, dental, vision, prescription drug, loss of license, life insurance, deferred compensation and disability benefits subject to the limits of the $11,725 statutory cap for each Employee; and (b) outstanding amounts owed by the Debtor in respect of their Withholding Obligations regarding Employee Benefits, if any, including those incurred prior to the Petition Date, and (ii) directing all banks to honor the Debtor's prepetition checks or electronic transfers for payment of any of the foregoing, and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing; the Court having reviewed the Motion, the contemporaneously filed *Declaration of Desiree Asher in Support of the Debtor's Chapter 11 Petition and Request for First Day Relief* and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court (the "Hearing"); and the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. § 1408; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2); (d) notice of the Motion and the Hearing was sufficient under the circumstances; and (e) the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and being otherwise fully advised in the premises, thereupon

**ORDERS AND ADJUDGES** as follows:

1.      The Motion is **GRANTED**.

2.      The Debtor is authorized, but not directed, to pay any pre-petition wages, salaries, commissions, bonuses and other compensation owed to the Salaried and Hourly Employees in the actual amounts determined to be owed to the Salaried and Hourly Employees after the next payroll is made, respectively; provided, however, that payments to the Salaried and Hourly

- 2 -

Employees on account of any unpaid wages, salaries, commissions, bonuses and other compensation shall not exceed the amounts afforded priority status by any applicable provisions of section 507 of the Bankruptcy Code.

3. The Debtor is authorized, but not required, to pay the pre-petition unpaid accrued vacation time upon termination and to allow Employees to use All Purpose Leave (APL) benefits accrued prior to the Petition Date, in accordance with the Debtor's pre-petition policies; provided however, that payments to Employees on account of any unpaid vacation time upon termination shall not exceed the amounts afforded priority status by any applicable provisions of section 507 of the Bankruptcy Code.

4. The Debtor is authorized, but not required, to honor and pay all pre-petition amounts due under any of the Employee Benefit Plans and to continue to honor, pay and maintain the Employee Benefit Plans post-petition, as provided in the Motion, in accordance with the Debtor's stated policies; provided however, that payments to Employees on account of any pre-petition Employee Benefit Plans shall not exceed the amounts afforded priority status by any applicable provisions of section 507 of the Bankruptcy Code.

5. The Debtor is authorized to pay outstanding amounts owed by the Debtor in respect of its Withholding Obligations regarding wages or compensation paid to Salaried Employees and to be paid to Hourly Employees, as well as Employee Benefits, if any, including those incurred prior to the Petition Date.

6. The Debtor is authorized, but not required, to issue post-petition checks or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests in respect of business expenses, Employee Benefit Plans and Withholding Obligations dishonored as a consequence of the commencement of this Chapter 11 case.

7.      Subject to paragraphs 8-13 below, all of the Debtor's banks are authorized and directed to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtor's payroll and general disbursement accounts related to business expenses, Employee Benefit Plans and Withholding Obligations, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

8.      With respect to Wells Fargo Bank, N.A. ("Wells Fargo"), the Debtor has established the following pre-petition accounts:

(i)      Account Number **********5093 (commonly known as the TLO, LLC Collateral Account);

(ii)     Account Number **********5103 (commonly known as the TLO, LLC Receivables Account);

(iii)    Account Number **********5116 (commonly known as the TLO, LLC Payables Account);

(iv)     Account Number **********5307 (commonly known as the TLO, LLC General Account);

(v)      Account Number ******8454 (commonly known as the TLO, LLC Merchant Account);

(vi)     Account Number ******9512 (commonly known as the TLO, LLC Payroll Account);

(vii)    Account Number ******0207 (commonly known as TLO, LLC Account); and

(viii)   Account Number **********8344 (commonly known as the Wells One Commercial Credit Card Agreement with a maximum limit of $200,000);

- 4 -

(collectively the foregoing accounts are known as the "Wells Fargo Accounts").

9. In connection with the TLO LLC Merchant Account, Wells Fargo provides automated clearing house services known as the "ACH Service" to the Debtor. With respect to the ACH Service, Wells Fargo provides immediately available provisional credit on deposits and/or collections from time to time to the Debtor with a maximum exposure to the Debtor of $100,000. With respect to the Wells One Commercial Credit Card Agreement, Wells Fargo is authorized to make advances from time to time on behalf of the Debtor with a maximum exposure to the Debtor of $200,000.

10. As security for all indebtedness owed by the Debtor to Wells Fargo in respect of the Wells One Commercial Credit Card Agreement and the ACH Service, the Debtor granted to Wells Fargo a security interest in the TLO, LLC Collateral Account (*********5093), pursuant to which the Debtor is required to maintain a minimum deposit balance of $400,000.00. (Collectively, the Debtor's obligations in connection with the ACH Service, the Wells One Commercial Credit Card Agreement, and the security agreement governing the TLO, LLC Collateral Account are the "Wells Fargo Obligations".)

11. The Debtor shall continue to maintain at all times a minimum of $400,000 in the TLO, LLC Collateral Account, inasmuch as Wells Fargo has and shall continue to have a valid and perfected, non-avoidable first-priority lien on the funds in the TLO, LLC Collateral Account to secure the Wells Fargo Obligations. Such lien shall not be primed by any lien granted to any post-petition lender or other person. To satisfy the requirement that Wells Fargo continue to have a valid and perfected, non-avoidable first-priority lien on the funds in the TLO, LLC Collateral Account, the Debtor grants Wells Fargo a priming lien and security interest pursuant to Section 364(d)(1) of the Bankruptcy Code with respect to any cash collateral necessary to

- 5 -

maintain the minimum balance of $400,000.00 in the TLO, LLC Collateral Account and to discharge the Wells Fargo Obligations (the "Additional Collateral").

12.    With respect to the Wells Fargo Accounts, it is ordered that:

a.    Wells Fargo is authorized to debit such accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the accounts that are cashed at the bank's counters or exchanged for cashier's checks by the payees thereof prior to the petition date; (ii) all checks or other items deposited in any one of the Wells Fargo Accounts prior to the petition date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the petition date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to Wells Fargo in respect of the Wells Fargo Obligations, including any ordinary monthly service charges for the maintenance of the Wells Fargo Accounts or ACH Services;

b.    Wells Fargo may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the petition date should be honored pursuant to this or any other order of this Court, and Wells Fargo shall not have any liability to any party for relying on such representations by the Debtor as provided for herein;

c.    all agreements existing between the Debtor and Wells Fargo, including, but not limited to, the Wells One Commercial Credit Card Agreement and any agreements governing the ACH Services (which contemplate further advances of credit up to an aggregate of $300,000 at any one time, as discussed above), shall continue to

- 6 -

govern the Wells Fargo Accounts and the post-petition cash management relationship between the Debtor and Wells Fargo, and all of the provisions of such agreements including, without limitation, the termination and fee provisions, shall remain in full force and effect;

d.      Wells Fargo is authorized to continue servicing all credit cards issued under the Wells One Commercial Credit Card Agreement in the normal course, and the Debtor is authorized to pay any valid claim incurred prior to or after the petition date in connection with the use of such credit cards and coming due after the petition date in the normal course;

e.      the Debtor and Wells Fargo may, without further Order of this Court, agree to and implement changes to the Wells Fargo Accounts and the cash management systems and procedures in the ordinary course of business including, without limitation, the opening and closing of accounts;

f.      Wells Fargo's liens against the Additional Collateral that secure the Wells Fargo Obligations constitute perfected, valid, binding and non-avoidable first priority liens on all such Additional Collateral; and

g.      The Wells Fargo Obligations that are incurred post-petition shall constitute administrative claims that the the Debtor is hereby authorized to pay in the ordinary course without further application to the Court. However, to the extent the Additional Collateral is insufficient to satisfy the Wells Fargo Obligations, Wells Fargo shall have a claim allowed under Sections 507(a)(2) and 507(b) of the Bankruptcy Code (the "Section 507(b) Claim"), and such Section 507(b) Claim shall be entitled to priority over every other claim allowable under such Section 507(a)(2). Notwithstanding the

- 7 -

foregoing, such Section 507(b) Claim of Wells Fargo shall be subject to (a) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6)), and (b) the fees due to the Clerk of the Court.

13.     Notwithstanding anything in the Motion or this Order to the contrary, this Order is intended to preserve the "status quo" with respect to the existing and ongoing banking and credit services relationship between Wells Fargo and the Debtor, including, but not limited to: (i) the continued use of the ACH Services and the Wells One Commercial Credit Card Agreement; (ii) the Debtor's obligation to maintain a minimum account balance of $400,000.00 in the TLO, LLC Collateral Account; and (iii) Wells Fargo's first-priority lien on the TLO, LLC Collateral Account as security for the Wells Fargo Obligations.

14.     Nothing herein or in the Motion nor any payments made by the Debtor pursuant to this Motion, shall be deemed an assumption or rejection of any Employee Benefit Plan, employment agreement, other program or contract, or otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract between the Debtor and any Employee or non-Employee Contract Attorney.

15.     The Debtor, its officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

16.     The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the interpretation or implementation of this Order.

###

Submitted by:

- 8 -

Alvin S. Goldstein, Esquire
Furr and Cohen, P.A.
Attorney for Debtor
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
(561)395-0500/(561)338-7432 fax
e-mail: agoldstein@furrcohen.com
Florida Bar No. 993621

H:\LIBRARY\BANKRUPTCY\TLO LLC 13-083\PLD\Wage Order.doc