UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:                                          Case No.  13-20853-PGH
                                                Chapter 11
TLO, LLC,

      Debtor.

_____/

**DEBTOR'S MOTION FOR ENTRY OF ORDER: (I) APPROVING PROCEDURES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS, (II) AUTHORIZING THE PAYMENT OF BREAKUP FEE
AND EXPENSE REIMBURSEMENT, (III) SETTING BID DEADLINE,
AUCTION AND SALE APPROVAL HEARING DATES,
(IV) ESTABLISHING NOTICE PROCEDURES AND APPROVING FORMS OF
NOTICE,  AND (V) APPROVING PROCEDURES RELATED TO ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

TLO, LLC**,** (the "Debtor"), by and through its undersigned counsel and pursuant to

sections 105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules

2002(a)(2), (c), (i) and (k), 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and Local Rule 6004-1, moves this Court for the entry of order (i)

Approving Procedures In Connection With The Sale Of Substantially All Of The Debtor's

Assets Free And Clear Of Liens, Claims, Encumbrances, And Other Interests, (ii) Authorizing

The Payment Of Breakup Fee And Expense Reimbursement, (iii) Setting Bid Deadline, Auction

And Sale Approval Hearing Dates, (iv) Establishing Notice Procedures And Approving Forms

Of Notice, And (v) Approving Procedures Related To Assumption And Assignment Of

Executory Contracts And Unexpired Leases (the "Motion").  In support of this Motion, the

Debtor states as follows:

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtor's Chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On May 9, 2013 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. As of the date hereof, no trustee or examiner has been appointed.

4. No previous application for the relief sought herein has been made by the Debtor to this Court or any other court.

## CONCISE STATEMENT UNDER LOCAL RULE 6004-1[1]

5. In accordance with Local Bankruptcy Rule 6004-1 is a summary of the nature of the Debtor's request

    a.   Identity of the Purchaser. Because the sale (the "Sale") is subject to higher and better offers, the identity of the purchaser is currently unknown. However, the anticipated proposed buyer is an affiliate of TransUnion Holding Company, Inc. (the "Proposed Buyer").[2] The Proposed Buyer is not an insider of the Debtor.

    b.   The Sale Terms.[3]

        i. The Sale Price: $105,000,000 (comprised of $90,000,000 in cash and $15,000,000 of the common stock of TransUnion Holding Company, Inc., or other, equally valued equity like instrument, which instrument shall be

---

[1] To the extent there are any inconsistencies between the terms of this summary (or otherwise in the text of this Motion) and any provision of the Bidding Procedures Order, the terms of the Bidding Procedures Order shall control. Terms not defined herein shall the meaning ascribed to such terms in the Bidding Procedures.

[2] The Debtor expects that by no later than October 31, 2013, the Stalking Horse APA should be signed. Upon Execution of the Stalking Horse APA, the Debtor will file its Motion to Approve the Sale of Substantially all of its Assets, Approval of the Stalking Horse and Breakup Fee and Expense Reimbursement. The Bidding Procedures Order and Stalking Horse APA (when signed), can be obtained from the official website for the Bankruptcy Court, www.flsb.uscourts.gov, by registered users of the Bankruptcy Court's electronic case filing system, or upon request by an Interested Party (as defined below) from the Financial Advisor.

[3] The complete terms of the sale will be set forth in the Motion to Approve Sale to be filed by the Debtor.

mutually acceptable to the Debtor (after consultation with the Committee and Tech. Inc.) and Proposed Buyer.

c.  <u>Auction Terms</u>.

 i.  Auction Date: November 20, 2013

 ii.  Auction Location: Akerman Senterfitt LLP, 350 East Las Olas Boulevard, Suite 1600, Fort Lauderdale, Florida 33301

 iii.  Initial Bid Increment Amount:  The initial incremental bid must propose a purchase price at least (i) $3,000,000 greater than the value of the Aggregate Purchase Price provided in the Stalking Horse APA; (ii) provide a cash component of at least $93,000,000; and (iii) provide for the acquisition of substantially all of the Acquired Assets and exclude substantially all of the Excluded Assets.

 iv.  Minimum Subsequent Bid (after Starting Bid, as defined below): $3,000,0000 in cash if the highest bid at the time is that of the Proposed Buyer, and $1,000,000.00 if the highest bid at the time is that of any competing bidder (the "<u>Competing Bidder</u>").

d.  <u>Requirements of Competing Bidders</u>.

 i.  Minimum Deposit: $10,000,000.00

 ii.  Documentation Requirements:  Executed asset purchase agreement in clean and redline, marked to show changes to the Stalking Horse APA.

 iii.  Other Qualifying Conditions:  Evidence demonstrating appropriate corporate authority to consummate the transaction; proof of financial ability to perform in form and substance acceptable to Debtor.

e.  <u>Bid Deadline</u>.

 i.  All Competing Bidders must submit their bids and all required information and documents on or before November 15, 2013 at 5: p.m.

f.  <u>Purchaser Protections Not Otherwise Described</u>.

 i.  Proposed Breakup Fee and Expense Reimbursement:  $2,500,000, inclusive of, and not in addition to, all third-party professional fees, costs and expenses incurred by the Proposed Buyer in connection with the conduct of due diligence and drafting and negotiation of the Stalking Horse APA and other documents or otherwise in connection with proposed transaction.

 ii.  Identity of all Known Lienholders:  Technical Electric Systems, Inc.; Palm Beach County Tax Collector; Wells Fargo Bank, N.A.; Technology Investors, Inc.

 iii.  Statement Requesting Dates for Hearings and Auction.  The Debtor

proposes a Bidding Procedures Hearing on October 22, 2013, an Auction on November 20, 2013, and a Sale Hearing on November 22, 2013.

### SUMMARY OF RELIEF REQUESTED

6.      The Debtor has been engaged in negotiating, and is continuing to negotiate, a Stalking Horse APA with an affiliate of TransUnion Holding Company, Inc.  The Proposed Buyer is not an insider of the Debtor.  The contemplated sale price is $105,000,000 (comprised of $90,000,000 in cash and $15,000,000 of the common stock of TransUnion Holding Company, Inc., or other, equally valued equity like instrument, which instrument shall be mutually acceptable to the Debtor (after consultation with the Committee and Tech. Inc.) and Proposed Buyer.[4]

7.      Under the Stalking Horse APA, the Debtor will reserve the right to accept a superior proposal on, and subject to, the terms set forth in the Bidding Procedures.  Accordingly, the Debtor requests a hearing (the "Bidding Procedures Hearing") for the Court to consider entry of an order (the "Bidding Procedures Order") (i) approving the bidding procedures substantially in the form of Exhibit 2, attached to the Bidding Procedures Order (the "Bidding Procedures") for additional bidding on the Acquired Assets, (ii) authorizing the payment of Breakup Fee and Expense Reimbursement; (iii) Setting Bid Deadline, Auction and Sale Approval Hearing Dates; (iv) Establishing Notice Procedures And Approving Forms of Notice, And (v) Approving Procedures Related to Assumption and Assignment of Executory Contracts and Unexpired Leases.

8.      The Debtor intends to consummate the Sale as promptly as possible, consistent with (i) the due process requirements pursuant to sections 363 and 365 of the Bankruptcy Code,

---

[4] The complete terms of the sale will be set forth in the Motion to Approve Sale to be filed by the Debtor.

and (ii) the sale process under the Bidding Procedures. By this Motion, the Debtor seeks approval and implementation of a three-step sales process, as follows:

        a.      a "Bidding Procedures Hearing" at which the Debtor will seek approval of the Bidding Procedures, as described below. The Debtor requests that the Bidding Procedures Hearing take place on October 22, 2013;

        b.      an "Auction" to be conducted in accordance with the Bidding Procedures, following a confirmatory due diligence period for other interested parties, assuming one or more "Qualified Bids" are timely received as provided in the Bidding Procedures. The Debtor proposes to conduct the Auction on November 20, 2013; and

        c.      a "Sale Hearing" proposed to be held on November 22, 2013, at __:00 a.m. (prevailing Eastern Time), before the Honorable Paul G. Hyman in the United States Bankruptcy Court for the Southern District of Florida, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, Florida 3340, at which time the Debtor will seek entry of an order (i) authorizing the Sale, (ii) authorizing and approving the Stalking Horse APA or other asset purchase agreement (if applicable), (iii) approving the assumption and assignment of executory contracts and unexpired leases, (iv) granting related relief (the "<u>Sale Order</u>").

9.      The Debtor expects to be able to meet its burden at the Bidding Procedures Hearing and the Sale Hearing of demonstrating that the sale efforts to date have been appropriately conducted, with the Debtor already having exposed the Acquired Assets to a targeted marketing process. As such, the proposed time frame will appropriately balance the Debtor's objective to quickly conclude the sale with the need to thoroughly market the Acquired Assets and properly negotiate a transaction.

## RELIEF REQUESTED

### A. THE BIDDING PROCEDURES

10.     In order to ensure that the Debtor's estate is able to derive maximum value from the Acquired Assets, the Debtor will retain the right to continue to solicit offers for the Acquired Assets, as provided in the Bidding Procedures.  The Debtor seeks to adopt procedures that will foster continued competitive bidding among potential buyers without eliminating or discouraging any qualified bids, including by the Proposed Buyer to be embodied in the Stalking Horse APA.

11.     The entry of the Bidding Procedures Order is a condition precedent to the consummation of the Sale.  The Debtor believes that the proposed Bidding Procedures constitute the best method of maximizing the value of the Acquired Assets through the continuation of a competitive sale process that will allow for the solicitation and submission of competitive bids (as set forth in the Bidding Procedures, a competitive bid submitted in accordance with these procedures shall be deemed a "Qualified Bid" and such bidder shall constitute a "Qualified Bidder").  Accordingly, the Debtor requests that the Court enter the Bidding Procedures Order authorizing the Debtor to implement the Bidding Procedures and schedule the Auction as more fully set forth in the Bidding Procedures.

12.     To be considered a Qualified Bid, each bid submitted must comply with the following requirements (as set forth in more detail in the Bidding Procedures):

   a.     A bid must be on terms that, in the Debtor's business judgment, are substantially the same as, or better than, the terms of the Sale set forth in the Stalking Horse APA.  A bid must include executed transaction documents pursuant to which the bidder proposes to effectuate the Competing Transaction (the "Modified Stalking Horse APA") and agrees to be bound.  A bid shall include a copy of the Stalking

–6–

Horse APA marked to show all changes requested by the bidder (including those related to purchase price); provided, however, that the terms of the Modified Stalking Horse APA must be substantially similar, the same or better than the terms of the Stalking Horse APA.  A bid must propose a competing transaction (a "Proposed Competing Transaction") involving substantially all of the Acquired Assets and excluding substantially all of the Excluded Assets.  A competing bid must propose a purchase price of at least (i) $3,000,000 greater than the value of the aggregate purchase price contained in the Stalking Horse APA and (ii) provide for a cash component of at least $93,000,000.

b.      A competing bid will not be considered as a Qualified Bid if (i) such bid contains additional representations and warranties, or covenants by the Debtor, closing conditions, due diligence requirements, or termination rights of the competing bidder, other than as may be included in the Stalking Horse APA, (ii) such bid is not received in writing on or prior to the Bid Deadline (as defined in the Bidding Procedures), and (iii) such bid does not contain evidence that the party submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, or (iv) such bid contains a break-up fee, expense reimbursement, or similar type of payment.  The competing Qualified Bid documents shall also identify any executory contracts and unexpired leases of the Debtor that the bidder wishes to have assumed and assigned to it pursuant to the Qualified Bid.

c.      Each bid must be accompanied by a deposit in the amount of $10,000,000 to an interest bearing escrow account to be identified and established by the Debtor

(the "Deposit").

      d.     Each such bidder must provide evidence satisfactory to the Debtor demonstrating the bidder's financial ability to close and to consummate the Proposed Competing Transaction, including, without limitation, evidence of the bidder's ability to provide adequate assurance of future performance under any unexpired leases and executory contracts to be assigned to it pursuant to Section 365 of the Bankruptcy Code;

13.    The Proposed Buyer shall be deemed a Qualified Bidder.

14.    The Bidding Procedures also contain the following relevant terms:

      a.     Subject to this Court's approval of the Bidding Procedures Motion, the Auction shall take place on November 20, 2013 at _____ a.m./p.m. (prevailing Eastern Time) at the offices of Akerman Senterfitt, LLP, 350 East Las Olas Boulevard, Suite 1600, Fort Lauderdale, Florida 33301, or such other place and time as the Debtor shall notify all Qualified Bidders, including the Proposed Buyer, the Committee, Technology Investors, Inc., counsel for the Proposed Buyer and other invitees in accordance with the Stalking Horse APA. Debtor's counsel and/ or Investment Bankr shall direct and preside over the Auction, and all bids at the Auction shall be transcribed by a court reporter. The Debtor shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the "Starting Bid").

      b.     An "Subsequent Bid" is any bid made at the Auction subsequent to the Debtor's announcement of the Starting Bid. Any Subsequent Bid after the Starting Bid shall be made in an increment in cash of not less than $3,000,000 higher than the

then highest bid; provided, however, if the then-highest bid is by anyone other than the Proposed Buyer, and Subsequent Bid must be in an increment in cash of not less than $1,000,000 more than the then-highest bid, except as provided in the immediately prior paragraph.   .

     c.     The Auction will continue until there is only one Qualified Bid that the Debtor determines, in its reasonable business judgment, after consultation with its financial and legal advisors, is the highest and best Qualified Bid at the Auction (the bidder submitting such bid, the "Successful Bidder").  The party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtor in the exercise of its business judgment, will be designated as the potential backup bidder (the "Acceptable Alternative Bidder").   In the event that a Qualified Bidder is identified by the Debtor as the Acceptable Alternative Bidder, such party shall be required to serve as the Acceptable Alternative Bidder.

     d.     The Acceptable Alternative Bidder shall be required to keep its initial bid (or if the Acceptable Alternative Bidder submitted one or more Subsequent Bids at the Auction, its final Subsequent Bid) (the "Acceptable Alternative Bid") open and irrevocable until the earlier of (i) one business day after the closing of the sale of the Acquired Assets to the Successful Bidder.  Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor may designate the Acceptable Alternative Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the transaction with the Acceptable Alternative Bidder without further order of the Bankruptcy Court. In such

case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtor, and the Debtor specifically reserves the right to seek all available damages from the defaulting Successful Bidder. The Deposit of the Acceptable Alternative Bidder shall be released by the Debtor within two (2) business days after the closing of the sale of the Acquired Assets to the Successful Bidder.

15.    Except as otherwise provided in the Bidding Procedures Order or the Bidding Procedures, the Debtor reserves the right as it may reasonably determine to be in the best interests of its estate, subject to obtaining input of Technology Investors, Inc. and the Committee, as well as approval of the Court, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any bid that, in its judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some or all of the Acquired Assets from the Auction; (f) waive terms and conditions set forth herein with respect to any or all potential bidders; (g) impose additional conditions set forth herein with respect to any or all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as the Debtor may determine to be in the best interests of its estate or to withdraw the Bidding Procedures Motion at any time prior to entry of the Bidding Procedures Order with or without prejudice.    In evaluating the foregoing, the Debtor may take into account non-price considerations, such as execution risk.

**B.  THE BIDDING PROCEDURES HEARING**

16.    Subject to Court approval, the Bidding Procedures Hearing shall be held before this Court on October 22, 2013.[5]

17.    Objections, if any, to the relief requested in this Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, Flagler Waterview Building, 151 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on the second business day before the hearing on the Bidding Procedures (the "Bid Procedures Objection Deadline"); and (d) be served upon the Notice Parties (as defined below), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

18.    On or before three (3) business days after entry of the Bidding Procedures Order, the Debtor will cause a notice, substantially in the form attached as Exhibit 1 to the Bidding Procedures Order (the "Sale Notice"), to be sent by first-class mail, postage prepaid, to the following: (i) all creditors of the Debtor (ii) all persons or entities know to the Debtor to have asserted any security interest or other lien on any property of the Debtor; (iii) the Environmental Protection Agency, (iv) the state environmental agencies in the jurisdictions where the Debtor owns real property, (v) the Florida Attorney General, (vi) all entities known to have expressed a bona fide interest in acquiring all or portions of any of the Debtor's assets, (vii) all applicable state and local taxing authorities or recording offices, (viii) the Office of the United States Trustee, (ix) the Internal Revenue Service, (x) the Securities & Exchange Commission, (xi) the United States Attorney General/Antitrust Division of Department of Justice, (xii) all Debtor's

---

[5] Contemporaneously with this Motion the Debtor is filing its *Ex Parte* Motion to Shorten Time to Notice Hearing.

insurers, (xiii) all non-Debtor parties to contracts or leases (executory or other), (xiv) all parties to any litigation proceedings involving the Debtor, (xv) all other known parties-in-interest in this Chapter 11 Case, (xvi) all parties that have executed a confidentiality agreement in connection with Debtor's marketing of its assets during this Bankruptcy Case, and (m) the Notice Parties (defined below).  The Notice Parties are: (a) counsel to the Debtor, Furr and Cohen, P.A., 2255 Glades Rd. Suite 337W, Boca Raton, Florida 33431, Attention: Robert C. Furr and Alvin S. Goldstein; (b) counsel to the Statutory Committee of Unsecured Creditors appointed in the Chapter 11 Case, Genovese Joblove & Battista, P.A., Miami Tower, 100 Southeast Second Street, Suite 4400, Miami, Florida 33131, Attention: Paul J. Battista; (c) counsel to The Eliza Desiree Asher Trust and The Caroline J. Asher Trust, as lenders under the Super Priority Debtor in Possession Credit Agreement, dated May 14, 2013, Gunster, Yoakley & Stewart, P.A., One Biscayne Tower, Suite 3400, Two South Biscayne Boulevard, Miami, Florida 33131, Attention: Raymond V. Miller; (d) counsel to Technology Investors, Inc., Fowler White Boggs P.A., P.O. Box 1438, Tampa, Florida 33601, Attention: Scott A. Underwood; (e) the Office of the United States Trustee for the Southern District of Florida, 51 S.W. 1st Avenue, Suite 1204, Miami, Florida; (f) counsel to the Proposed Buyer, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center 250 Greenwich Street, New York, New York 10007, Attention: Philip D. Anker, and Berger Singerman LLP,1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, Attention: Paul Steven Singerman; and (g) all persons who have filed a request for notice under Bankruptcy Rule 2002.

### C.  ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

19.     In connection with the Sale, the Auction and the entry of the Sale Order (whether the Successful Bidder is the Proposed Buyer or another Qualified Bidder submitting a Qualified

Bid), the Debtor requests this Court's approval of the *Notice Of Assumption, Assignment And Cure Amount With Respect To Executory Contracts And Unexpired Leases Related To The Sale Of Substantially All Assets Of The Debtor*, attached as Exhibit 3 to the Bidding Procedures Order (the "<u>Notice of Assignment and Cure</u>"), which sets forth the following procedures for the assumption and assignment of certain executory contracts and unexpired leases:

  a. Not later than seven (7) calendar days prior to the Sale Objection Deadline, the Debtor shall cause to be served by overnight courier or hand delivery on the counterparties to each executory contract and unexpired lease that the Debtor proposes to be assumed and assigned (the "<u>Assigned Contracts</u>"), the Notice of Assignment and Cure.

  b. The Notice of Assignment and Cure will include (a) the title of the Assigned Contract to be assumed, (b) the name of the counterparty to the Assigned Contract, (c) any applicable cure amounts as determined by the Debtor, (d) that the assignee is the Proposed Buyer or its designee, or any other Successful Bidder, and (e) the deadline by which any counterparty to the Assigned Contract must object.

  c. Any objection to the assumption and/or assignment of any Assigned Contract identified on a Notice of Assignment and Cure, including to the cure amount set forth on such notice (or with respect to the provision of adequate assurance of future performance), must be in writing, filed with the Court, and be actually received by the Notice Parties no later than November 18, 2013, at 5:00 p.m. (prevailing Eastern Time) (the "<u>Assignment and Cure Objection Deadline</u>"), and must set forth (a) a specific default under the Assigned Contract, (b) if applicable, claim a specific monetary amount that differs from the amount, if

any, specified by the Debtor in such Notice of Assignment of Cure to cure all defaults, and (c) the basis for the objection.

d.  If no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, then the assumption and assignment of that Assigned Contract will be authorized pursuant to section 365 of the Bankruptcy Code and the cure amount, if any, set forth on the Notice of Assignment and Cure shall be binding upon the non-Debtor party to the Assigned Contract for all purposes and will constitute a final determination (a) that the Assigned Contract may be assumed by the Debtor and assigned to the Proposed Buyer (or Successful Bidder, if applicable), and (b) of the total cure amount required to be paid to the non-Debtor party (or parties) to the Assigned Contract in connection with any potential assignment of such Assigned Contract to the Proposed Buyer (or Successful Bidder, if applicable). In addition, if no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, each non-Debtor party to such Assigned Contract shall deemed to have consented, and shall be forever barred from objecting, to the assumption and assignment of such Assigned Contract on any grounds, and the cure amount, if any, set forth in the Notice of Assignment and Cure, including, without limitation, the right to assert any additional cure and other amounts with respect to the Assigned Contracts arising or relating to any period prior to such assumption or assignment or the right to demand adequate assurance of future performance.  Furthermore, if no objection is received by the Assignment and

−14−

Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, the Proposed Buyer (or Successful Bidder, if applicable) shall enjoy all of the rights and benefits under such Assigned Contract acquired by such Proposed Buyer or Successful Bidder without the necessity of obtaining any party's written consent to the Debtor's assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment.

e.  If a timely objection is received to the assumption and assignment of an Assigned Contract and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or, with the agreement of the Debtor and Proposed Buyer (or Successful Bidder, if applicable) a later date set by the Court. The pendency of a dispute relating to cure amounts will not prevent or delay the assumption and assignment of any Assigned Contracts, and the Debtor may proceed with the assumption and assignment of the Assigned Contract, retain sufficient funds to cure all defaults claimed by the non-Debtor counterparty, and resolve the dispute regarding the cure amount at a later date as set by the Court.

20.    In addition to the foregoing, as soon as practicable, but in any event no later than three (3) business days after the entry of the Bidding Procedures Order, the Debtor shall publish the notice of the sale, in a form determined by the Debtor in National Edition of *The Wall Street Journal*, the *Sun Sentinel* and the *Miami Herald*.

WHEREFORE, the Debtor, TLO, LLC requests that this Court enter an order, substantially in the form attached as Exhibit A, (i) approving the bidding procedures herein; (ii) authorizing the payment of Breakup Fee and Expense Reimbursement; (iii) Setting Bid Deadline, Auction and Sale Approval Hearing Dates; (iv) Establishing Notice Procedures And Approving Forms of Notice, And (v) Approving Procedures Related to Assumption and Assignment of Executory Contracts and Unexpired Leases; and (vi) granting such other and further relief as this Court deems just and proper.

Dated: October 15, 2013.                     Respectfully submitted,
                                             **FURR AND COHEN, P.A**
                                             *Attorneys for Debtor In Possession*
                                             2255 Glades Rd., #337 W
                                             Boca Raton, Florida 33431
                                             Phone: (561) 395-0500
                                             Fax:  (561)  338-7532

                                             By: */s/ Robert C. Furr*
                                                 Robert C. Furr, Esq.
                                                 Florida Bar No.
                                                 Email:  rfurr@furrcohen.com
                                                 Alvin S. Goldstein, Esq.
                                                 Florida Bar No.
                                                 E-mail:  agoldstein@furrcohen.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:                                              Case No.  13-20853-PGH
                                                    Chapter 11
TLO, LLC,

          Debtor.
_____/

**ORDER (I) APPROVING PROCEDURES IN CONNECTION WITH THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS, (II) AUTHORIZING THE PAYMENT OF BREAKUP FEE AND
EXPENSE REIMBURSEMENT, (III) SETTING BID DEADLINE, AUCTION
AND SALE APPROVAL HEARING DATES, (IV) ESTABLISHING
NOTICE PROCEDURES AND APPROVING FORMS OF NOTICE, AND
(V) APPROVING PROCEDURES RELATED TO ASSUMPTION AND
<u>ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

Upon the *Debtor's Motion for Entry of Order: (i) Approving Procedures In Connection
With The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of Liens, Claims,
Encumbrances, And Other Interests, (ii) Authorizing The Payment Of Breakup Fee And Expense
Reimbursement, (iii) Setting Bid Deadline, Auction And Sale Approval Hearing Dates, (iv)
Establishing Notice Procedures And Approving Forms Of Notice, And (v) Approving Procedures*

1

EXHIBIT "A"

*Related To Assumption And Assignment Of Executory Contracts And Unexpired Leases* (the "Motion"),[1] dated October 15, 2013, of TLO, LLC, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), for entry of an order (this "Order") pursuant to sections 105(a), 363(b), 365, 503(b) and 507 of chapter 11 of title 11 of the United States Code, *et seq.* (the "Bankruptcy Code"); Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"), for, *inter alia*, approval of the procedures to be used in connection with the proposed sale (the "Sale") of substantially all of the Debtor's assets; and the Court having held a hearing to consider the relief requested in the Motion (the "Bidding Procedures Hearing"); and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors; and due and proper notice of this Motion having been given; and it appearing that no other or further notice is required; and upon the record of the Bidding Procedures Hearing; and all of the proceedings before the Court; and after due deliberation, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.    This Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334.  Venue of the Chapter 11 Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion or Bidding Procedures (defined below), as applicable.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

B. The Debtor has provided due and proper notice of the Motion, and the relief sought therein and the Bidding Procedures Hearing, and no further notice is necessary. A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures, the Breakup Fee and Expense Reimbursement, the Sale Notice, the Notice of Assignment and Cure, all as defined below) has been afforded to all interested parties, including but not limited to the Notice Parties (defined below).

C. The Debtor's proposed (i) notice of Bid Deadline, Auction and the Sale Hearing in the form attached hereto as Exhibit 1 (the "Sale Notice"), (ii) bidding procedures (the "Bidding Procedures") in the form attached hereto as Exhibit 2, and (iii) the notice of assignment and assignment and cure amounts attached hereto as Exhibit 3 (the "Notice of Assignment and Cure") are, and in each case substantially in the forms attached hereto, appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the matters set forth therein, including but not limited to the Bidding Procedures, the Auction (as defined below), the Sale, the Sale Hearing (as defined below), objection and bid deadlines, and the assumption and assignment of unexpired leases, license agreements and executory contracts, and no other or further notice is required.

D. The Bidding Procedures were negotiated in good faith and at arm's length, are fair and appropriate under the circumstances, and are in the best interests of the Debtor's estate and all parties in interest.

E. The Debtor has demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (a) approve of the Bidding Procedures; (b) authorize the Debtor to pay the Breakup Fee and Expense Reimbursement under the terms and conditions

- 3 -

as set forth this Order; (c) set the dates of the Bid Deadline (as defined below), Auction (if needed) and Sale Hearing; (d) establish notice procedures and approve the forms of notice; and (e) approve the procedures related to assumption and assignment of executory contracts and unexpired leases.

F.      The Breakup Fee and Expense Reimbursement, as approved by this Order (and as set forth below), are fair and reasonable and provide a benefit to the Debtor's estate and creditors.

G.      Payment of the Breakup Fee and Expense Reimbursement to the Proposed Buyer upon the conditions set forth in this Order is (a) an actual and necessary cost of preserving the Debtor's estate, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (b) reasonably tailored to encourage, rather than hamper, bidding for the Debtor's assets, (c) of a substantial benefit to the Debtor's estate and creditors and all parties in interest herein, (d) reasonable and appropriate, and (e) a material inducement for the agreements of an affiliate of TransUnion Holding Company, Inc.  (the "Proposed Buyer") to pursue its proposed agreement to purchase the Debtor's assets, as more fully described in the Motion.

H.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.

I.      Entry of this Order is in the best interests of the Debtor and its estate, creditors, interest holders, and all other parties in interest, and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted, as provided herein.

2.      Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

- 4 -

3.     The Sale Notice, Bidding Procedures, and Notice of Assignment and Cure, attached hereto as Exhibits 1, 2, and 3, respectively, are approved in all respects and shall apply to the Sale.  The Debtor is authorized to fill in and complete the Sale Notice and Notice of Assignment and Cure with the information contemplated by such notices, and to make clarifying or non-material changes thereto.

4.     The Bidding Procedures are fully incorporated into this Order, and the Debtor is authorized and directed to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5.     Within three (3) days after entry of this Order, the Debtor shall cause the Sale Notice to be sent by first-class mail, postage prepaid, to (i) all creditors of the Debtor, (ii) all persons or entities known by the Debtor to have asserted any security interest or other lien on any property of the Debtor, (iii) the Environmental Protection Agency, (iv) the state environmental agencies in the jurisdictions where the Debtor owns real property, (v) the Florida Attorney General, (vi) all entities known to have expressed a bona fide interest in acquiring all or portions of any of the Debtor's assets, (vii) all applicable state and local taxing authorities or recording offices, (viii) the Office of the United States Trustee, (ix) the Internal Revenue Service, (x) the Securities & Exchange Commission, (xi) the United States Attorney General/Antitrust Division of Department of Justice, (xii) all Debtor's insurers, (xiii) all non-Debtor parties to contracts or leases (executory or other), (xiv) all parties to any litigation proceedings involving the Debtor, (xv) all other known parties-in-interest in this Chapter 11 Case, (xvi) all parties that have executed a confidentiality agreement in connection with Debtor's marketing of its assets during this Bankruptcy Case, and (xvii) the Notice Parties (defined

- 5 -

below).  The Notice Parties are: (a) counsel to the Debtor, Furr and Cohen, P.A., 2255 Glades Rd. Suite 337W, Boca Raton, Florida 33431, Attention: Robert C. Furr and Alvin S. Goldstein; (b) counsel to the Statutory Committee of Unsecured Creditors appointed in the Chapter 11 Case, Genovese Joblove & Battista, P.A., Miami Tower, 100 Southeast Second Street, Suite 4400, Miami, Florida 33131, Attention: Paul J. Battista; (c) counsel to The Eliza Desiree Asher Trust and The Caroline J. Asher Trust, as lenders under the Super Priority Debtor in Possession Credit Agreement, dated May 14, 2013, Gunster, Yoakley & Stewart, P.A., One Biscayne Tower, Suite 3400, Two South Biscayne Boulevard, Miami, Florida 33131, Attention: Raymond V. Miller; (d) counsel to Technology Investors, Inc., Fowler White Boggs P.A., P.O. Box 1438, Tampa, Florida 33601, Attention: Scott A. Underwood; (e) the Office of the United States Trustee for the Southern District of Florida, 51 S.W. 1st Avenue, Suite 1204, Miami, Florida (the "U.S. Trustee"); (f) counsel to the Proposed Buyer, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center 250 Greenwich Street, New York, New York 10007, Attention: Philip D. Anker, and Berger Singerman LLP,1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, Attention: Paul Steven Singerman; and (g) all persons who have filed a request for notice under Bankruptcy Rule 2004.

6.      To alert all parties who are not known to possess a claim against the Debtor, on or about the same date, the Debtor shall publish notice of the Sale, in a form determined by the Debtor, for three (3) consecutive business days in the National Edition of *The Wall Street Journal*, the *Sun Sentinel* and the *Miami Herald*.

7.      The Debtor is authorized to enter into an asset purchase agreement, on terms it deems reasonable, with the Proposed Buyer, for the sale, free and clear of all liens, claims, liabilities, and other interests, of substantially all assets of the Debtor (the "Stalking Horse

- 6 -

APA"); ***provided, however***, (i) the Debtor shall file a fully executed copy of the Stalking Horse APA on the docket of the Chapter 11 Case no later than November 1, 2013 and (ii) the Sale pursuant to the Stalking Horse APA to the Proposed Buyer shall occur only if the Bankruptcy Court enters an order approving such Sale.

8.    All bids for the Debtor's assets (other than that of the Proposed Buyer) must be submitted in writing so that they are received in accordance with the Bidding Procedures no later than November 15, 2013, at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").

9.    For a bid, other than the Qualified Bid of the Proposed Buyer, to constitute a Qualified Bid (as defined in the Bidding Procedures), it must be received by the Bid Deadline and otherwise comply with all provisions of the Bidding Procedures.

10.    If the Debtor receives no Qualified Bids (other than the Qualified Bid of the Proposed Buyer), by the Bid Deadline the Debtor shall not conduct the Auction, and instead shall seek approval of the Sale to the Proposed Buyer, pursuant to the Stalking Horse APA, at the Sale Hearing.

11.    In the event the Debtor receives, on or before the Bid Deadline, one or more Qualified Bids (in addition to the Qualified Bid of the Proposed Buyer), the Debtor shall conduct an auction (the "Auction") to determine the highest and best offer for the Sale.  The Auction shall commence at the office of Akerman Senterfitt LLP, 350 East Las Olas Boulevard, Suite 1600, Fort Lauderdale, Florida 33301, on November 20, 2013 at __:00 _.m. (prevailing Eastern Time), or such later time on such day or such other place as the Debtor shall notify all Qualified Bidders.  The Auction shall be conducted in accordance with the Bidding Procedures.

12.    On November 22, 2013 at __:00 _.m. (prevailing Eastern Time), a hearing to approve the Sale to the Proposed Buyer (or Successful Bidder, if applicable) (the "Sale

- 7 -

Hearing") shall be held before the Honorable Paul G. Hyman in the United States Bankruptcy Court for the Southern District of Florida, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, Florida 33401; **provided, however**, the Sale Hearing may be adjourned, from time to time, without further notice other than by announcement of the adjournment in open Court or on the Court's docket; **provided further**, that the Court may, subject to Debtor's compliance with the Bankruptcy Code and otherwise applicable Bankruptcy Rules, conduct a hearing on confirmation of any Chapter 11 plan proposed by the Debtor on the same day as the Sale Hearing.

13.     Objections to the transactions contemplated by the Sale (a "Sale Objection") shall (i) be filed with this Court and served on the Notice Parties, so as to be received on or before November 18, 2013 (the "Sale Objection Deadline"), at 5:00 p.m. (prevailing Eastern Time); (ii) be in writing and conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court; (iii) set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate or properties, the basis for the objection and the specific grounds therefore; and (iv) be served so as to be received by the Sale Objection Deadline on all Notice Parties.

14.     The failure to file and serve a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion thereof at the Sale Hearing or thereafter.

15.     Subject to paragraph 17 below, in the event that the Debtor sells or otherwise transfers all or a substantial portion of its assets, as part of a sale approved pursuant to the Sale process contemplated by the Bidding Procedures or any other sale process within one (1) year of the date of the signing of the Stalking Horse APA, to any party other than the Proposed Buyer (an "Alternative Transaction"), then the Debtor shall pay to the Proposed Buyer, from the

- 8 -

proceeds of the applicable Alternative Transaction immediately upon the consummation thereof, $2,500,000 (the "Breakup Fee and Expense Reimbursement"), provided that the Proposed Buyer is (a) not in material breach of any representation, warranty or covenant contained in the Stalking Horse APA, and (b) in material compliance with the Bidding Procedures. The Breakup Fee and Expense Reimbursement shall be inclusive of, and not in addition to, all third-party professional fees, costs and expenses incurred by the Proposed Buyer in connection with the conduct of due diligence and drafting and negotiation of the Stalking Horse APA and other documents or otherwise in connection with proposed transaction.

16.    Pursuant to sections 105, 363, 503 and 507 of the Bankruptcy Code, the Debtor is hereby authorized, empowered and directed to pay the Breakup Fee and Expense Reimbursement to the Proposed Buyer, in accordance with, and subject to, the terms of this Order without further order of this Court.    Subject to paragraph 17 below, the Breakup Fee and Expense Reimbursement is hereby allowed as a super-priority administrative expense priority claim under sections 503(b) and 507(a) of the Bankruptcy Code in the Debtor's Chapter 11 Case.

17.    Notwithstanding anything herein to the contrary, it shall be a condition precedent to the Proposed Buyer's right to payment of the Breakup Fee and Expense Reimbursement that (a) the Proposed Buyer shall have executed the Stalking Horse APA, and (b) the deadline for any "due diligence out" in the Stalking Horse APA shall have passed without the exercise of that "out" by the Proposed Buyer.  In the event that the Proposed Buyer does not execute the Stalking Horse APA, or exercises a "due diligence out" in the Stalking Horse APA before the deadline for doing so has expired, the Debtor may designate another bidder that executes an asset purchase agreement acceptable to the Debtor, under which such other bidder agrees to provide the Debtor the same aggregate consideration ($105,000,000) that the Proposed Buyer has offered, as the

"stalking horse" for purposes of the Sale, in which event such other bidder shall be entitled to the Breakup Fee and Expense Reimbursement under, and subject to, the same conditions and terms specified hereunder.

18.     Not later than seven (7) calendar days prior to the Sale Objection Deadline, the Debtor shall cause the Notice of Assignment and Cure to be served by overnight courier or by hand on the counterparties to each executory contract and unexpired lease that the Debtor proposes to be assumed and assigned to the Proposed Buyer (or Successful Bidder, if applicable) (the "Assigned Contracts").

19.     The Notice of Assignment and Cure will include (a) the title of the Assigned Contract to be assumed, (b) the name of the counterparty to the Assigned Contract, (c) any applicable cure amounts as determined by the Debtor, (d) that the assignee is the Proposed Buyer or its designee, or any other Successful Bidder, and (e) the deadline by which any counterparty to the Assigned Contract must object.

20.     Any objection to the assumption and/or assignment of any Assigned Contract identified on a Notice of Assignment and Cure, including to the cure amount set forth on such notice (or with respect to the provision of adequate assurance of future performance), must be in writing, filed with the Court, and be actually received by the Notice Parties no later than November 18, 2013, at 5:00 p.m. (prevailing Eastern Time) (the "Assignment and Cure Objection Deadline"), and must set forth (a) a specific default under the Assigned Contract, (b) if applicable, claim a specific monetary amount that differs from the amount, if any, specified by the Debtor in such Notice of Assignment of Cure to cure all defaults, and (c) the basis for the objection.

- 10 -

21. If no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, then the assumption and assignment of that Assigned Contract will be authorized pursuant to section 365 of the Bankruptcy Code and the cure amount, if any, set forth on the Notice of Assignment and Cure shall be binding upon the non-Debtor party to the Assigned Contract for all purposes and will constitute a final determination (a) that the Assigned Contract may be assumed by the Debtor and assigned to the Proposed Buyer (or Successful Bidder, if applicable), and (b) of the total cure amount required to be paid to the non-Debtor party (or parties) to the Assigned Contract in connection with any potential assignment of such Assigned Contract to the Proposed Buyer (or Successful Bidder, if applicable). In addition, if no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, each non-Debtor party to such Assigned Contract shall deemed to have consented, and shall be forever barred from objecting, to the assumption and assignment of such Assigned Contract on any grounds, and the cure amount, if any, set forth in the Notice of Assignment and Cure, including, without limitation, the right to assert any additional cure and other amounts with respect to the Assigned Contracts arising or relating to any period prior to such assumption or assignment or the right to demand adequate assurance of future performance. Furthermore, if no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, the Proposed Buyer (or Successful Bidder, if applicable) shall enjoy all of the rights and benefits under such Assigned Contract acquired by such Proposed Buyer or Successful Bidder without the necessity of obtaining any party's written consent to the Debtor's assumption and assignment of such rights and benefits, and each such

- 11 -

party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment.

22.     If a timely objection is received to the assumption and assignment of an Assigned Contract and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or, with the agreement of the Debtor and Proposed Buyer (or Successful Bidder, if applicable) at a later date set by the Court.  The pendency of a dispute relating to the cure amount will not prevent or delay the assumption and assignment of any Assigned Contract, and the Debtor may proceed with the assumption and assignment of the Assigned Contract, retain sufficient funds to cure all defaults claimed by the non-Debtor counterparty, and resolve the dispute regarding the cure amount at a later date as set by the Court.

23.     Notwithstanding anything to the contrary contained herein, any executory contract or unexpired lease of the Debtor may be added to or deleted from the list of Assigned Contract at any time up to the closing of the Sale (or thereafter), in accordance with the terms of the Stalking Horse APA.

24.     Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

25.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26.     To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in the Chapter 11 Case, the terms of this Order shall govern.

27.     Nothing in this Order shall be deemed to have limited or modified any of the conditions to closing set forth in the Stalking Horse APA.

28. The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.

###

**SUBMITTED BY:**
Robert C. Furr, Esq.
Furr and Cohen, P.A.
*Attorneys for Debtor in Possession*
2255 Glades Road #337W
Boca Raton, FL 33431
(561)395-0500
(561)338-7432 fax
E-mail: rfurr@furrcohen.com

**Copies furnished to**:
Robert C. Furr, Esq.
Furr and Cohen, P.A.
*Attorneys for Debtor in Possession*
2255 Glades Road #337W
Boca Raton, FL 33431

Attorney Robert C. Furr is directed to serve a copy of this Order on the relevant parties and file a Certificate of Service with the Court.

**<u>EXHIBIT 1</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:                                              Case No.  13-20853-PGH
                                                    Chapter 11
TLO, LLC,

            Debtor.
_____/

**NOTICE OF BID DEADLINE, AUCTION, AND SALE
HEARING IN CONNECTION WITH THE SALE OF
<u>SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS</u>**

NOTICE IS HEREBY GIVEN, as follows:

     1.     On October 15, 2013, the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") filed a motion seeking approval of, and authorization for, among other things (i) the bidding procedures (the "<u>Bidding Procedures</u>") to be used in connection with the sale (the "<u>Sale</u>") of substantially all of the Debtor's assets; (ii) the dates of the Bid Deadline, Auction (if needed) and Sale Hearing (all as defined below), and (iii) related relief (the "<u>Bidding Procedures Motion</u>"), on the docket of the Debtor's chapter 11 case, currently pending in United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>").  By order dated October ___, 2013, the Bankruptcy Court approved the Bidding Procedures and the Bidding Procedures Motion (the "<u>Bidding Procedures Order</u>").  A copy of the Bidding Procedures Order, together with the Bidding Procedures, is enclosed herewith.  In the event of any inconsistency between the Bidding Procedures Order (or the Bidding Procedures) and this Notice, the Bidding Procedures Order (or the Bidding Procedures) shall control.

     2.     The Debtor intends to enter into an asset purchase agreement on terms it deems reasonable, with an affiliate of TransUnion Holding Company Inc. (the "<u>Proposed Buyer</u>"), for the sale, free and clear of all liens, claims, liabilities, and other interests, to the maximum extent permitted by section 363 of the Bankruptcy Code, of substantially all assets of the Debtor (the "<u>Stalking Horse APA</u>").  The Debtor will file the Stalking Horse APA as an attachment to its motion seeking approval of the Stalking Horse APA on the docket of the Debtor's chapter 11 case by November 1, 2013.  This notice shall be notice of the hearing to consider such motion.  As set forth in the Bidding Procedures, the Sale of the Debtor's assets remains subject to competing offers from any prospective qualified bidder.

     3.     All interested parties are invited to become a Qualified Bidder (as defined in the Bidding Procedures Order) and to make offers to purchase the Debtor's assets in accordance with the terms of the Bidding Procedures and the Bidding Procedures Order.  **The deadline to submit competing bids is November 15, 2013 at 5:00 p.m. (prevailing Eastern time).**

4.      Interested bidders requesting information about the qualification process, including a description of the assets, the forms of asset purchase agreement, and/or information in connection with due diligence should contact: Bayshore Partners, LLC, 401 E. Las Olas Boulevard, Suite 2360 Fort Lauderdale, Florida, 33301, Attention: Steven Zuckerman, 954-358-3800 x308, szuckerman@farlieturner.com, Scott Saunders, 954-358-3800 x302, ssaunders@farlieturner.com, or Charles Fultz, 954-358-3800 x311, cfultz@farlieturner.com. Requests by all other parties for a copy of the Stalking Horse APA, the Bidding Procedures, the Bidding Procedures Motion or for any other information concerning the Sale can be obtained by written request to counsel to the Debtor, Furr and Cohen, P.A., 2255 Glades Rd. Suite 337W, Boca Raton, Florida 33431, Attention: Robert C. Furr and Alvin S. Goldstein.

5.      Pursuant to the Bidding Procedures Order, the Debtor may conduct an auction (the "Auction") for the Sale of the assets at the offices of Akerman Senterfitt LLP, 350 East Las Olas Boulevard, Suite 1600, Fort Lauderdale, Florida 33301, commencing on **November 20, 2013 at \_\_:\_\_ \_.m. (prevailing Eastern Time)**, or at such other place and time as the Debtor shall notify all Qualified Bidders.  Only the authorized representatives of each of the Qualified Bidders shall be eligible to participate in the Auction.

6.      At a **hearing on November 22, 2013 at \_\_:\_\_ \_.m. (prevailing Eastern time)** or such other time as the Bankruptcy Court shall determine (the "Sale Hearing"), the Debtor intends to seek the Bankruptcy Court's approval of the Sale to the Proposed Buyer pursuant to the Stalking Horse APA or, if applicable, for authority to sell the Debtor's assets to any bidder submitting the highest, or otherwise best, offer (the "Successful Bidder").  The Sale Hearing will be held before the Honorable Paul G. Hyman in the United States Bankruptcy Court for the Southern District of Florida, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, Florida 33401.

7.      At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this chapter 11 case.  **Objections**, if any, to the transactions contemplated by the Sale (a "Sale Objection") pursuant to the terms of the agreements reached with the Proposed Buyer or any other Successful Bidder, including but not limited to objections to the assumption and assignment of executory contracts and unexpired leases, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of Florida, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate or properties, the basis for the objection and the specific grounds therefor, and **shall be filed with the Bankruptcy Court and be served upon the following parties, so as to be actually received on or before November 18, 2013 at 5:00 p.m. (Prevailing Eastern Time) (the "Objection Deadline")**: (a) counsel to the Debtor, Furr and Cohen, P.A., 2255 Glades Rd. Suite 337W, Boca Raton, Florida 33431, Attention: Robert C. Furr and Alvin S. Goldstein; (b) counsel to the Statutory Committee of Unsecured Creditors appointed in the Debtor's chapter 11 case, Genovese Joblove & Battista, P.A., Miami Tower, 100 Southeast Second Street, Suite 4400, Miami, Florida 33131, Attention: Paul J. Battista; (c) counsel to The Eliza Desiree Asher Trust and The Caroline J. Asher Trust, as lenders under the Super Priority Debtor in Possession Credit Agreement, dated May 14, 2013, Gunster, Yoakley & Stewart, P.A., One Biscayne Tower, Suite 3400, Two South Biscayne Boulevard, Miami, Florida 33131, Attention: Raymond V. Miller; (d) counsel to Technology

Investors, Inc., Fowler White Boggs P.A., P.O. Box 1438, Tampa, Florida 33601, Attention: Scott A. Underwood; (e) the Office of the United States Trustee for the Southern District of Florida, 51 S.W. 1st Avenue, Suite 1204, Miami, Florida (the "U.S. Trustee"); (f) counsel to the Proposed Buyer, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center 250 Greenwich Street, New York, New York 10007, Attention: Philip D. Anker and Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, Attention: Paul Steven Singerman; and (g) all persons who have filed a request for notice under Bankruptcy Rule 2004. On or before the date that is seven (7) calendar days before the Objection Deadline, the Debtor will send a separate notice to counterparties to executory contracts and unexpired leases that the Debtor proposes to be assumed and assigned to the Proposed Buyer (or Successful Bidder, if applicable).

8.     This notice is qualified in its entirety by the Bidding Procedures Motion, Bidding Procedures Order and the Bidding Procedures, and all persons and entities are urged to read the those filing and the provisions thereof carefully.

**PLEASE TAKE NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE BIDDING PROCEDURES MOTION AND BIDDING PROCEDURES ORDER MAY RESULT IN THE DISQUALIFICATION OF A BID AND THE FAILURE OF THE BANKRUPTCY COURT TO CONSIDER A SALE OBJECTION.**

Dated: West Palm Beach, FL
        October 15, 2013

FURR AND COHEN, P.A.

_____
Robert C. Furr
Alvin S. Goldstein
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561)338-7532
E-Mail: rfurr@furrcohen.com
        agoldstein@furrcohen.com

Attorneys for the Debtor

## Exhibit 2

# BIDDING PROCEDURES

TLO, LLC, a debtor and debtor in possession in case under chapter 11 of the Bankruptcy Code, Case No. 13-20853-PGH (the "<u>Debtor</u>" or "<u>Seller</u>"), currently pending in the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>"), has entered into, or is contemplating entering into, a stalking-horse asset purchase agreement (the "<u>Stalking Horse APA</u>") with an affiliate of TransUnion Holding Company, Inc. (the "<u>Proposed Buyer</u>").[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stalking Horse APA.

Pursuant to the contemplated Stalking Horse APA, and subject to the terms and conditions thereof, the Proposed Buyer proposes to acquire substantially all the assets of the Seller (as defined more specifically as the "<u>Acquired Assets</u>" in the Stalking Horse APA[2]) free and clear of all Interests (defined below) (the "<u>Stalking Horse Bid</u>").  The Stalking Horse Bid contemplates that the Proposed Buyer will not assume any liabilities of the Debtor, except, as set forth in the Stalking Horse APA, certain costs arising after the closing of the sale under contracts or leases to be assumed and assigned to the Proposed Buyer, as and to the extent required for the assumption and assignment of those contract and leases.  (The Debtor shall pay all costs to cure any defaults arising prior to closing under those contracts and leases).

The aggregate consideration to the Seller provided for in the Stalking Horse Bid is $105,000,000 (comprised of $90,000,000 in cash and $15,000,000 of the common stock of TransUnion Holding Company, Inc., or other, equally valued equity-like instrument which instrument shall be mutually acceptable to the Debtor (after consultation with the Committee and Tech. Inc., both as defined below) and Proposed Buyer) (the "<u>Aggregate Purchase Price</u>").

In order to attain the highest or otherwise best offer for the Acquired Assets, the Debtor proposes these bidding procedures (the "<u>Bidding Procedures</u>") to solicit potential competing bids for the Acquired Assets.

---

[1] These Bidding Procedures (as defined below) were approved by the Bankruptcy Court by order entered on _____, 2013 [Docket No. _____] (the "<u>Bidding Procedures Order</u>").  The Debtor expects that by no later than October 31, 2013, the Stalking Horse APA should be signed.  The Bidding Procedures Order and Stalking Horse APA (when signed) can be obtained from the official website for the Bankruptcy Court, www.flsb.uscourts.gov, by registered users of the Bankruptcy Court's electronic case filing system, or upon request by an Interested Party (as defined below) from the Investment Banker.

[2] For the avoidance of doubt, the Proposed Buyer shall not acquire the "<u>Excluded Assets</u>," as defined more specifically in the Stalking Horse APA, including, without limitation, any claims of the Seller under any insurance policy on the life of Hank Asher, and shall also not acquire the Seller's subsidiary, Greencook Services, LLC.

**Any interested potential bidder should contact Debtor's investment banker (the "Investment Banker") as soon as practical:**

**Bayshore Partners, LLC**
401 E. Las Olas Boulevard, Suite 2360
Fort Lauderdale, FL 33301
Attention:

| | | |
|---|---|---|
| Steve Zuckerman | Scott Saunders | Charles Fultz |
| Managing Director | Managing Director | Director |
| 954-358-3800 x308 | 954-358-3800 x302 | 954-358-3800 x311 |
| szuckerman@farlieturner.com | ssaunders@farlieturner.com | cfultz@farlieturner.com |

These Bidding Procedures describe, among other things, (a) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (b) the conduct of the Auction (as defined below), if necessary, (c) the selection of the Successful Bidder (as defined below), and (d) the Bankruptcy Court's approval of the sale of the Acquired Assets to the Successful Bidder (as defined below).

I.    **Participation Requirements**

a.    **Interested Parties**

To participate in the bidding process, each interested person or entity other than the Proposed Buyer (each an "Interested Party") must deliver the following (unless previously delivered) to the Investment Banker so as to be received on or before 5:00 p.m. (prevailing Eastern Time) on November 6, 2013:

(1).    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor; and

(2).    sufficient information, as determined by the Debtor, to allow the Debtor to determine that the Interested Party has the financial wherewithal to close the contemplated transaction, including, but not limited to, current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Debtor) of the Interested Party or of those entities that will guarantee the obligations of the Interested Party.

An Interested Party will be deemed a "Potential Bidder" if the Debtor determines, after receipt of the items identified above, that an Interested Party has the financial wherewithal (based on financial information submitted by the Interested Party, the availability of financing, experience and other considerations deemed relevant by the Debtor) to submit a bona fide offer and will be able to consummate a sale if selected as the Successful Bidder (as defined below). No later than three (3) business days after the Debtor determines that an Interested Party is a Potential Bidder, the Debtor will notify such Interested Party that it is a Potential Bidder and grant such Potential Bidder due diligence access, as provided below.  Notwithstanding the

- 2 -

foregoing, neither the Debtor nor its representatives will be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets to any Interested Party.

## II.    Due Diligence

The Debtor shall grant each Potential Bidder access to Debtor's confidential electronic data room concerning the Acquired Assets previously made available to the Proposed Buyer (the "Data Room").  From October 21, 2013 until the Bid Deadline (as defined below), the Debtor shall allow Potential Bidders to visit the Debtor's offices in Boca Raton, Florida upon reasonable advance notice and during normal business hours.

The Debtor, with the assistance of the Investment Banker, will coordinate all reasonable requests for information and due diligence access from Potential Bidders. The Debtor will provide any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtor determines, in its sole and absolute discretion, to be reasonable and appropriate under the circumstances.  In the event that the Investment Banker receives a communication in writing for material due diligence information that has not been made available in the Data Room, and the Debtor furnishes such information to the Potential Bidder requesting such information, the Debtor will simultaneously provide such information to the Proposed Buyer.

Unless otherwise determined by the Debtor, the availability of additional due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder, from and after the Bid Deadline, or (b) this bidding process is terminated in accordance with its terms.

## III.    Qualified Bids

Each offer, solicitation or proposal by a Potential Bidder (a "Bid") must satisfy each of the following conditions in this Section III to be deemed a "Qualified Bid," and for the Potential Bidder to be deemed a "Qualified Bidder."

### a.    Bid Deadline

A Potential Bidder who desires to be a Qualified Bidder must submit a Qualified Bid, so as to be received not later than 5:00 p.m. (prevailing Eastern Time) on November 15, 2013 (the "Bid Deadline"), by the following: (i) the Investment Banker; (ii) counsel to the Debtor, Furr and Cohen, P.A., 2255 Glades Rd. Suite 337W, Boca Raton, Florida 33431, Attention: Robert C. Furr and Alvin S. Goldstein; (iii) counsel to the Statutory Committee of Unsecured Creditors appointed in the Debtor's chapter 11 case (the "Committee"), Genovese Joblove & Battista, P.A., Miami Tower, 100 Southeast Second Street, Suite 4400, Miami, Florida 33131, Attention: Paul J. Battista; (iv) counsel to The Eliza Desiree Asher Trust and The Caroline J. Asher Trust, as lenders under the Super Priority Debtor in Possession Credit Agreement, dated May 14, 2013, Gunster, Yoakley & Stewart, P.A., One Biscayne Tower, Suite 3400, Two South Biscayne Boulevard, Miami, Florida 33131, Attention: Raymond V. Miller; and (v) counsel to Technology Investors, Inc. ("Tech. Inc."), Fowler White Boggs P.A., P.O. Box 1438, Tampa, Florida 33601, Attention: Scott A. Underwood.

- 3 -

Within one (1) business day of the Bid Deadline, the Debtor shall provide the Proposed Buyer with copies of any submitted Bids.

b. **Bid Requirements**

To constitute a Qualified Bid, a Bid must, in the Debtor's determination after consultation with the Committee and Tech. Inc., as well as approval by the Bankruptcy Court of the Bid Procedures Order:

(1). include an acknowledgement or letter stating that such bidder's offer is irrevocable until the earlier of (i) one business day after the closing of the sale of the Acquired Assets approved by the Bankruptcy Court, and (ii) 30 days after the conclusion of the Auction (provided that if Hart-Scott-Rodino review of the sale of the Acquired Assets is required, this deadline shall be extended to a date under which the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 has expired, but not beyond 60 days after the conclusion of the Auction);

(2). be in writing and upon and subject to the same or more favorable terms and conditions as are contained in the Stalking Horse APA;

(3). be in the form of a duly authorized and executed asset purchase agreement, substantially in the form of the Stalking Horse APA (together with all exhibits and schedules), with a redline that shows changes in such bidder's proposed purchase agreement against the Stalking Horse APA;

(4). provide a purchase price having a total value at least $3,000,000 greater than the value of the Aggregate Purchase Price provided in the Stalking Horse APA;

(5). provide for a cash component of the purchase price of at least $93,000,000;

(6). provide for the acquisition of substantially all the Acquired Assets and the exclusion of substantially all the Excluded Assets;

(7). provide written evidence that demonstrates that the Potential Bidder has the necessary financial ability to close its contemplated competing transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such competing transaction. Such information must include, inter alia, the following:
   a. contact names and numbers for verification of financing sources;
   b. evidence of the Potential Bidder's (not its individual member's) internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the

- 4 -

Debtor in the amount of the cash portion of such Bid, in each case, as are needed to close the competing transaction;

c.  the Potential Bidder's current financial statements (audited, if they exist); and

d.  any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating and, in accordance with the authorized and executed asset purchase agreement submitted with such Bid, that such Potential Bidder has the ability to close the contemplated competing transaction;

(8).  include such financial information, projections, contracts, or other information as may be required for the Debtor to evaluate any proposed form of non-cash consideration;

(9).  not be conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval and include evidence, in form and substance satisfactory to the Debtor in its sole and absolute discretion, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the transaction;

(10).  fully disclose (i) the identity of each entity, and (ii) all shareholders and members of such entity holding more than 20% of the voting rights or beneficial ownership of such entity that will be bidding (or that will be participating in the financing of the Bid of such entity) for the Acquired Assets or otherwise participating (as part of a group or otherwise) in connection with such bid, and the complete terms of any such participation, *provided*, *however*; that the Debtor may, in its reasonable discretion, waive the 20% threshold set forth in this section III.b.10.ii.

(11).  be accompanied by a deposit by wire transfer to an escrow agent selected by the Debtor/Debtor's counsel (the "Escrow Agent"), of $10,000,000 (the "Deposit") (*provided*, *however*, the term "Escrow Agent" as used herein shall, in the case of any Deposit from the Proposed Buyer, be the escrow agent specified in the Stalking Horse APA and any escrow agreement entered into in connection therewith);

(12).  set forth the representatives who are authorized to appear and act on behalf of the bidder at the Auction;

(13).  indicate that the bidder will not seek any transaction or breakup fee, expense reimbursement, or similar type of payment (except for the Breakup Fee and Expense Reimbursement to be paid to the Proposed Buyer under the circumstances specified in the Bidding Procedures Order and Stalking Horse APA);

(14).    include evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtor and assigned to the bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases; and

(15).    be received on or before the Bid Deadline.

A Bid received will constitute a Qualified Bid from a Qualified Bidder **only** if it meets all of the above requirements.    Bids other than Qualified Bids will not be considered. Notwithstanding the foregoing, or anything else to the contrary contained in these Bidding Procedures, the Proposed Buyer is deemed a Qualified Bidder and the Stalking Horse APA is deemed a Qualified Bid for all purposes in connection with the Bidding Procedures.

The Debtor may, in its sole and absolute discretion, evaluate Bids on various grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Debtor including, without limitation, payment of the Breakup Fee and Expense Reimbursement to the Proposed Buyer.

In consultation with the Committee and Tech. Inc., the Debtor shall make a determination, in its sole and absolute discretion, whether a Bid is or is not a Qualified Bid; **provided**, **however**, that to constitute a Qualified Bid, a Bid **must** comply with **all** the requirements sets forth in section III above.  The Debtor shall notify each bidder as to whether its Bid has been determined to be a Qualified Bid by no later than 5:00 p.m. (prevailing Eastern Time) on the day that is two business days after the Bid Deadline.

Upon its submission of a Bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

IV.    **Breakup Fee and Expense Reimbursement Amount**

Recognizing the Proposed Buyer's expenditure of time, energy, and resources, and the benefit that these efforts provided to all parties in interest, the Debtor has agreed that if the Proposed Buyer is not the Successful Bidder, in the circumstances specified in the Stalking Horse APA and the Bidding Procedures Order, to pay to the Proposed Buyer the Breakup Fee and Expense Reimbursement.  The payment of the Breakup Fee and Expense Reimbursement will be governed by the provisions of the Stalking Horse APA and the Bidding Procedures Order.  The combined Breakup Fee and Expense Reimbursement is set at $2,500,000.

V.    **No Additional Qualified Bids**

If Debtor does not receive any Qualified Bid other than the Proposed Buyer's Qualified Bid on or prior to the Bid Deadline, no Auction shall occur and the Debtor shall seek approval of the Stalking Horse APA at the Sale Hearing (as defined and set forth below) and no further Bids shall be considered.

VI.    **Auction**

In the event that the Debtor timely receives one or more Qualified Bids (i.e., from a Qualified Bidder other than the Proposed Buyer), the Debtor shall conduct an auction (the "Auction") of the Acquired Assets at the offices of Akerman Senterfitt LLP, 350 East Las Olas Boulevard, Suite 1600, Fort Lauderdale, Florida 33301, commencing on November 20, 2013 at __:__ _.m. (prevailing Eastern Time). The Auction shall be conducted in accordance with these Bidding Procedures, by counsel to the Debtor and/or the Investment Banker. The Auction may be adjourned without further notice by an announcement of the adjourned date at the Auction.

The Auction shall be governed by the following procedures.

(1).    The Auction process shall be transcribed by a qualified court reporter.

(2).    Only a Qualified Bidder that has submitted a Qualified Bid, the Proposed Buyer, the other persons specified in section III.a hereto, or such other persons or entities as the Debtor reasonably determines, shall be permitted to attend the Auction. Only a Qualified Bidder that has submitted a Qualified Bid and the Proposed Buyer will be eligible to participate at the Auction and submit any Subsequent Bids (as defined below) at the Auction.

(3).    At least two business days prior to the Auction, the Debtor will provide copies of the Qualified Bid that the Debtor believes is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders (including the Proposed Buyer) which have informed the Debtor of their intent to participate in the Auction and, if requested, will provide an explanation of how the Starting Bid is valued and a list containing the identification of all Qualified Bidder(s).

(4).    Bidding at the Auction shall commence at the amount of the Starting Bid. Subsequent bidding (including by the Proposed Buyer) will occur in one or more rounds, with each subsequent bid in a minimum increment of (i) at least $3,000,000 in cash if such bid is the bid immediately following a bid by the Proposed Buyer, or (ii) at least $1,000,000 in cash if such bid is the bid immediately following a bid by any Qualified Bidder other than the Proposed Buyer (each, a "Subsequent Bid").

(5).    A round of bidding will conclude after each participating and still-eligible Qualified Bidder has had the opportunity, in turn, to submit one Subsequent Bid with full knowledge of the immediately prior round of bids.

- 7 -

(6).    All Subsequent Bids shall be open and made orally in the presence of all parties at the Auction, and shall be transcribed by the court reporter.

(7).    Bidding will continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid is submitted by a Qualified Bidder.

(8).    The Auction may include individual negotiations by the Debtor with Qualified Bidders.

(9).    For the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtor shall take into account the Breakup Fee and the Expense Reimbursement payable to the Proposed Buyer under the Stalking Horse APA and Bidding Procedures Order if the Proposed Buyer is not the Successful Bidder.  For the purpose of evaluating Subsequent Bids, the Debtor may require a Qualified Bidder (other than the Proposed Buyer) submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in its sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction at the amount of the Subsequent Bid.

(10).    The Debtor may, in consultation with the Committee and Tech. Inc., employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (a) not inconsistent with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any other order of the Bankruptcy Court entered in connection herewith and (b) disclosed to each Qualified Bidder.

## VII.    **Selection Of Successful Bid**

The Auction shall continue until there is only one Subsequent Bid (but only after all still-eligible Qualified Bidders have had the opportunity to submit a higher or otherwise better Subsequent Bid in that round of bidding) that the Debtor determines in its sole discretion and subject to consultation with the Committee and Tech. Inc. as well as Bankruptcy Court approval, is the highest or otherwise best offer (the "Successful Bid" by the "Successful Bidder").  In making this determination, the Debtor shall consider all factors it deems relevant, including, without limitation, the form of consideration being offered (including the amount of the cash component of the purchase price, the size and structure of any equity interest offered to the Debtor, the ability of the Qualified Bidder to operate the Acquired Assets successfully, and the amount and structure of any non-cash component of the purchase), the cost of the Breakup Fee and the Expense Reimbursement payable to the Proposed Buyer if it is not the Successful Bidder, the likelihood of a Qualified Bidder's ability to close a transaction and the timing thereof, the ability of a Qualified Bidder to obtain any required approvals and permits, any contingencies relating to a Qualified Bidder's offer, and the net benefit to the Debtor's estate.

- 8 -

In selecting the Successful Bid, the Debtor reserves the right to reject any Subsequent Bid, other than a bid by the Proposed Buyer, that the Debtor in its reasonable discretion deems to be inadequate or insufficient, or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bidding Procedures set forth herein, or contrary to the best interests of the Debtor and its estate.

The next highest and or otherwise best bid (the "Acceptable Alternative Bid") shall remain binding and enforceable on the party making the Acceptable Alternative Bid (the "Acceptable Alternative Bidder") until  one business day after the closing of the sale of the Acquired Assets to the Successful Bidder.

The Debtor will sell the Acquired Assets to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing.  Only the Proposed Buyer or another entity constituting the Successful Bidder shall be entitled to purchase the Acquired Assets pursuant to these Bidding Procedures.

## VIII.    **The Sale Hearing**

On November 22, 2013 at __:__ _.m. (prevailing Eastern Time), a hearing to approve the sale of the Acquired Assets (the "Sale Hearing") to the Successful Bidder (or the Proposed Buyer, if no Auction is held) will be held before the Honorable Paul G. Hyman in the United States Bankruptcy Court for the Southern District of Florida, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, Florida 33401.  The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing.  At the Sale Hearing, the Debtor will seek approval of the offer constituting the Successful Bid, and, at the Debtor's election, the offer constituting the Acceptable Alternative Bid (if any).

If the Debtor does not receive any Qualified Bids (other than the Qualified Bid of the Proposed Buyer), the Debtor will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Proposed Buyer in accordance with the terms of the Stalking Horse APA following entry of the Sale Order.

The Debtor's presentation to the Bankruptcy Court of the offer constituting the Successful Bid and Acceptable Alternative Bid (if any) will not constitute the Debtor's acceptance of either (or any such) bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing.  Following approval at the Sale Hearing of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtor or the Successful Bidder upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Acceptable Alternative Bid will be deemed to be the Successful Bid and the Debtor will be authorized, but not directed, to effectuate a sale to the Acceptable Alternative Bidder subject to the terms of such Acceptable Alternative Bid without further order of the Bankruptcy Court.

IX.    **Return of Deposit**

The Deposit(s) of all Qualified Bidder(s) will be held in escrow by the Escrow Agent and while held in escrow will not become property of the Debtor's bankruptcy estate unless released to the Debtor from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court.  The Escrow Agent will retain the Deposit(s) of the Successful Bidder and the Acceptable Alternative Bidder (if any) until the closing of the transaction contemplated by the Successful Bid unless otherwise ordered by the Bankruptcy Court. The Deposit(s) of the other Qualified Bidder(s) will be returned within two (2) business days of the entry of the Sale Order. At the closing of the transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Deposit. The Deposit of the Acceptable Alternative Bidder will be released by the Debtor within two (2) business days after the closing of the transaction contemplated by the Successful Bid.  Upon the return of the Deposit(s), their respective owner(s) will receive any and all interest that will have accrued thereon.  In addition to the foregoing, and notwithstanding anything to the contrary contained herein, the Proposed Buyer shall be entitled to the return of any Deposit it makes as and when, and in the circumstances, specified in the Stalking Horse APA and any escrow agreement entered into in connection therewith.

X.    **As Is, Where Is**

The sale of the Acquired Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate except as provided in the Stalking Horse APA or any other agreement with respect to the sale approved by the Bankruptcy Court.

XI.    **Free and Clear of Any and All Interests**

To the maximum extent permitted by section 363 of the Bankruptcy Code, and as set forth in the proposed Sale Order, the sale of the Acquired Assets shall be free and clear of all liens, claims, encumbrances, liabilities and other obligations and interests (collectively, the "Interests"), other than the Assumed Liabilities (as defined in the Stalking Horse APA or any other asset purchase agreement with any other Successful Bidder), with such Interests to attach to the net proceeds realized by the Debtor from the sale of the Acquired Assets with the same validity and priority as such Interests applied against the Acquired Assets.

**<u>EXHIBIT 3</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:                                                    Case No.  13-20853-PGH
                                                          Chapter 11
TLO, LLC,

            Debtor.

_____/

**NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE
AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND
UNEXPIRED LEASES RELATED TO THE SALE OF SUBSTANTIALLY
ALL ASSETS OF THE DEBTOR**

NOTICE IS HEREBY GIVEN, as follows:

1.       On October 15, 2013, the above-captioned debtor and debtor in possession (the "Debtor") filed a motion (the "Bidding Procedures Motion"), seeking approval of, and authorization for, among other things (i) the bidding procedures (the "Bidding Procedures") to be used in connection with the sale (the "Sale") of substantially all of the Debtor's assets; (ii) approving procedures related to assumption and assignment of executory contracts and unexpired leases, and (iii) related relief on the docket of the Debtor's chapter 11 case, currently pending in United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").   By order dated October ___, 2013 (the "Bidding Procedures Order"), the Bankruptcy Court approved the Bidding Procedures and the Bidding Procedures Motion.   A copy of the Bidding Procedures Order, together with the Bidding Procedures, is enclosed herewith.  In the event of any inconsistency between the Bidding Procedures Order (or the Bidding Procedures) and this Notice, the Bidding Procedures Order shall control.

2.       To effectuate the Sale, the Debtor [intends to enter][has entered] into an asset purchase agreement, on terms it deems reasonable, with an affiliate of TransUnion Holding Company, Inc. (the "Proposed Buyer"), for the sale, free and clear of all liens, claims, liabilities, and other interests, to the maximum extent permitted by section 363 of the Bankruptcy Code, of substantially all assets of the Debtor (the "Stalking Horse APA").  The Debtor will file with the Bankruptcy Court the Stalking Horse APA as an attachment to its motion seeking approval of the Stalking Horse APA on the docket of the Debtor's chapter 11 case by November 1, 2013.  As set forth in the Bidding Procedures, the Sale of the Debtor's assets remains subject to competing offers from any prospective qualified bidder. The Bidding Procedures and the  Stalking Horse APA (when signed), can be obtained from the official website for the Bankruptcy Court, www.flsb.uscourts.gov, by registered users of the Bankruptcy Court's electronic case filing system, or upon written request by a interested party from Debtor's Financial Advisor—Bayshore Partners, LLC, 401 E. Las Olas Boulevard, Suite 2360 Fort Lauderdale, Florida, 33301, Attention:  Steven Zuckerman, 954-358-3800 x308, szuckerman@farlieturner.com, Scott

Saunders, 954-358-3800 x302, ssaunders@farlieturner.com, or Charles Fultz, 954-358-3800 x311, cfultz@farlieturner.com.

3.    **The deadline for competing bidders to submit competing bids in accordance with the Bidding Procedures is November 15, 2013 at 5:00 p.m. (prevailing Eastern time).**

4.    At a hearing on **November 22, 2013 at __:__ _.m. (prevailing Eastern time)** or such other time as the Bankruptcy Court shall determine (the "Sale Hearing"), the Debtor intends to seek the Bankruptcy Court's approval of the Sale to the Proposed Buyer or, if applicable, for authority to sell the Debtor's assets to any other bidder submitting the highest, or otherwise best offer through the bidding process described in the Bidding Procedures (the "Successful Bidder"). The Sale Hearing will be held before the Honorable Paul G. Hyman in the United States Bankruptcy Court for the Southern District of Florida, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, Florida 33401. The deadline to object to the Sale (the "Sale Objection Deadline") is be **November 18, 2013 at 5:00 p.m. (Prevailing Eastern Time.**

5.    As a component of the Sale, the Debtor has sought authorization to assume and assign to the Proposed Buyer or to any other Successful Bidder certain executory contacts and unexpired leases relating to the Debtor's assets to be sold as part of the Sale upon consummation thereof (the "Assigned Contracts").

6.    **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO AN ASSIGNED CONTRACT (OR REPRESENT A PARTY TO AN ASSIGNED CONTRACT).**

7.    Exhibit A attached to this Notice contains (a) the title of each Assigned Contract(s) to be assumed to which you may be a party (or a representative of such party), (b) the name of the non-Debtor counterparty to the Assigned Contract(s), and (c) any amounts as determined by the Debtor necessary to cure any default under such Assigned Contract(s) required to be cured in connection with the assumption and assignment of the Assigned Contract(s) (the "Cure Amounts"). Notwithstanding the anything to the contrary contained herein, any executory contract or unexpired lease may be added or deleted to the list of Assigned Contacts at any time up to the closing of Sale (or thereafter) in accordance with the Stalking Horse APA.

8.    Any **objections** to the assumption and/or assignment of any Assigned Contract(s) ("Objections"), including to the Cure Amount(s) (or with respect to the provision of adequate assurance of future performance by the Proposed Buyer or other Successful Bidder), **must be in writing, filed with the Bankruptcy Court, and be actually received by the Notice Parties (defined below) no later than November 18, 2013, at 5:00 p.m. (prevailing Eastern Time)** (the "Assignment and Cure Objection Deadline"), and must set forth (a) a specific default under the Assigned Contracts and (b) if applicable, claim a specific monetary amount that differs from the amount, if any, for the proposed cure of all defaults required to be cured specified in Exhibit A. Objections must also be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and set forth the name of the objecting party, the basis for the objection and the specific grounds therefore.

9.      The Notice Parties are:  (a) counsel to the Debtor, Furr and Cohen, P.A., 2255 Glades Rd. Suite 337W, Boca Raton, Florida 33431, Attention: Robert C. Furr and Alvin S. Goldstein; (b) counsel to the Statutory Committee of Unsecured Creditors appointed in the Debtor's chapter 11 case, Genovese Joblove & Battista, P.A., Miami Tower, 100 Southeast Second Street, Suite 4400, Miami, Florida 33131, Attention: Paul J. Battista; (c) counsel to The Eliza Desiree Asher Trust and The Caroline J. Asher Trust, as lenders under the Super Priority Debtor in Possession Credit Agreement, dated May 14, 2013, Gunster, Yoakley & Stewart, P.A., One Biscayne Tower, Suite 3400, Two South Biscayne Boulevard, Miami, Florida 33131, Attention: Raymond V. Miller; and (d) counsel to Technology Investors, Inc., Fowler White Boggs P.A., P.O. Box 1438, Tampa, Florida 33601, Attention: Scott A. Underwood; (e) the Office of the United States Trustee for the Southern District of Florida, 51 S.W. 1st Avenue, Suite 1204, Miami, Florida; (f) counsel to the Proposed Buyer, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center 250 Greenwich Street, New York, New York 10007, Attention: Philip Anker, and Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, Attention:  Paul Steven Singerman; and (g) all persons who have filed a request for notice under Bankruptcy Rule 2004.

10.     If a timely Objection is received to the assumption and assignment of an Assigned Contract and such Objection cannot otherwise be resolved by the parties, the Court may hear such Objection at the Sale Hearing or with the agreement of the Debtor and Proposed Buyer (or Successful Bidder, if applicable) at such later date set by the Court.  The pendency of a dispute relating to Cure Amounts will not prevent or delay the assumption and assignment of your respective Assigned Contract(s), and the Debtor may proceed with the assumption and assignment of your respective Assigned Contract(s) by retaining sufficient funds to cure any claimed default, and resolve the dispute regarding the Cure Amount at a later date as set by the Court.

11.     If the Debtor receives qualified bids from bidders other than the Proposed Buyer, the Debtor will conduct an auction (the "Auction") in accordance with the Bidding Procedures commencing on November 20, 2013.  If the Proposed Buyer is not the successful bidder at the Auction, then by not less than one (1) business day prior to the Sale Hearing, you may file an additional Objection based solely on the ability of the Successful Bidder (other than the Proposed Buyer) to perform its obligations under your respective Assigned Contract.  You may obtain the name of any Successful Bidder other than the Proposed Buyer following the Auction upon request from the Financial Advisor.

12.     If no Objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of your Assigned Contract(s), then the assumption and assignment of your Assigned Contract(s) will be authorized pursuant to section 365 of the Bankruptcy Code and the Cure Amount(s), if any, set forth in this Notice shall be binding for all purposes and will constitute a final determination (a) that the Assigned Contract may be assumed by the Debtor and assigned to the Proposed Buyer (or Successful Bidder, if applicable), and (b) of the total Cure Amounts required to be paid to you in connection with any potential assignment of such Assigned Contract to the Proposed Buyer (or Successful Bidder, if applicable).  In addition, if no timely objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of your Assigned Contract(s), you shall be deemed to have consented, and shall be forever barred from objecting to the assumption and assignment of

such Assigned Contract on any grounds, including, without limitation, any requirement for the provision of adequate assurance of future performance by the Proposed Buyer (or Successful Bidder, if applicable).

Dated: West Palm Beach, FL       FURR AND COHEN, P.A.
       October __, 2013

_____
Robert C. Furr
Alvin S. Goldstein
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561)338-7532
E-Mail: rfurr@furrcohen.com
       agoldstein@furrcohen.com

Attorneys for the Debtor