# MEDIATION SETTLEMENT

This stipulation for settlement (the "Settlement") is made this __ day of November 2013 by and between Tracers Information Specialists, Inc. ("Tracers"), Terry Kilburn, Nancy Kilburn, and TLO, LLC ("TLO") based on the agreement reached between the parties on November 11, 2013 while attending mediation. Tracers, TLO, Terry Kilburn and Nancy Kilburn may be hereinafter referred to as a "Party," or collectively as the "Parties."

**WHEREAS**, on May 9, 2013 (the "Petition Date"), TLO filed a voluntary petition for chapter 11 bankruptcy thereby initiating *In re TLO, LLC*, Case No. 13-20853-PGH (the "Case") before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court");

**WHEREAS**, on August 29, 2013, Tracers filed a proof of claim for an unsecured claim in the amount of $1,750,000.00 based on TLO's use of Tracer's data prior to the Petition Date (the "Claim") [*see* POC 26];

**WHEREAS**, on October 30, 2013, Tracers filed a complaint for *inter alia* a declaratory judgment that Tracers owns the data, and TLO does not have any valid ownership interest in such data (the "Complaint") thereby initiating adversary proceeding 13-01794-PGH (the "Adversary Proceeding").

**WHEREAS**, on October 31, 2013, Tracers filed its *Motion for Allowance and Payment of Administrative Expense Claims* ("Administrative Claim Motion") which seeks an administrative claim in the amount of $125,000.00 per month relating to TLO's use of Tracers' bulk data after the Petition Date, and an administrative claim in the amount of $4,354.84 relating to TLO's use of Tracers' file transfer data after the Petition Date (together, the "Administrative Claim") [*see* ECF No. 376]

**WHEREAS**, on November 1, 2013, TLO filed the *Motion for Entry of Order: (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests (Other Than Assumed Liabilities), (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 390] (the "Sale Motion"), through which Tracers believes that TLO is attempting to sell data that Tracers owns.

**WHEREAS**, on November 6, 2013, TLO filed its objection to claim that seeks to strike and disallow the Claim in its entirety [*see* ECF No. 414].

**WHEREAS**, on November 8, 2013, TLO filed its preliminary response to the Administrative Claim Motion, which asserts *inter alia* Tracers is owed nothing for the data, Tracers does not own the data, Tracers had been paid for the data, and Tracers is not entitled to any claim for TLO's use of the data [*see* ECF No. 432].

**WHEREAS**, on November 9, 2013, TLO filed its *Answer and Affirmative Defenses* in the Adversary Proceeding [*see* ECF No. 36].

**WHEREAS**, the Parties participated in mediation and good faith settlement negotiations on November 11, 2013 and have reached an agreement set forth in the Settlement;

**WHEREAS**, in order to avoid the costs and uncertainties of litigation, without any of the Parties admitting any fault or liability, the Parties desire to settle this matter amicably and without further litigation; and

**WHEREAS**, the Parties wish to set forth the terms of their agreement in the Settlement.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties stipulate and agree as follows:

1. Recitals Incorporated. Recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of the Settlement.

2. Allowed Administrative Claim. The Administrative Claim of Tracers shall be recognized and allowed as a post-petition administrative claim in the amount of $1,000,000 (the "Allowed Administrative Claim"), which shall be paid at confirmation.

3. Allowance of the Claim. The Claim of Tracers shall be recognized and allowed as a general unsecured claim in the amount of $600,000 (the "Allowed Unsecured Claim").

4. Member Unit Options. All 250,000 membership unit options held by Terry Kilburn shall be retained by Terry Kilburn, and shall be deemed allowed without any additional filing with the Bankruptcy Court.

5. Avoidance Actions. Any avoidance actions pursuant to Chapter 5 of the Bankruptcy Code against Tracers, Terry Kilburn and Nancy Kilburn and any of their respective agents, attorneys, representatives, employees, officers, directors, successors, assigns, parents, subsidiaries, affiliates, heirs, executors, administrators have been released and resolved through this Settlement.

6. The Data. The Parties agree that with respect to the data within TLO's system as of November 11, 2013, and copies of such data, which data files and types are set forth in the list attached hereto as **EXHIBIT A** (the "1/3 Data"), the Parties are permitted to use, sell or license the 1/3 Data. Any other data provided by Tracers to TLO will be removed from TLO's systems (the "2/3 Data"), and TLO will return any drives or storage device relating to the 2/3 Data to Tracers upon the entry of the Final Order (defined below). As soon as reasonably practicable upon the entry of the Final Order (defined below), TLO will permit Tracers to confirm that the 2/3 Data has been removed from TLO's system through an independent third party. Tracers shall retain exclusive ownership rights in all the 2/3 Data and TLO shall not assert any ownership rights in the 2/3 Data.

7. Discovery and Documents. Any documents and information exchanged by the Parties in the course of litigation relating to the Adversary Proceeding and due diligence relating to TLO's attempted purchase of Tracers will be returned to the providing Party.

8. Approval of Settlement. After the execution of the Settlement by the Parties, TLO shall promptly seek approval of the Settlement by the Court on an expedited basis and shall take all reasonable steps to obtain the Final Order (defined below), including against defending against any objections raised to the Settlement by any party. Tracers agrees to cooperate with TLO in obtaining the Final Order.

9. Conditions Precedent. The Parties agree that the enforceability of the Settlement is conditioned upon, and subject to: a) TLO filing an appropriate emergency motion seeking approval of the Settlement with the Bankruptcy Court on or before November 13, 2013; b) the approval of the Settlement by TransUnion Acquisition Corp., the Official Committee of General Unsecured Creditors and Technology Investors, Inc. on or before November 13, 2013 unless otherwise agreed to in writing by the Parties; and c) the Bankruptcy Court entering an Order approving the Settlement in its entirety that becomes final and non-appealable (the "Final Order").

10. Failure to Approve Stipulation. If the Court does not approve the Settlement in its entirety, or the order approving the Settlement is successfully challenged on appeal, none of the Parties hereto shall be construed to have prejudiced, waived or withdrawn or adversely affected any of their respective rights, claims, defenses or positions regarding the disputes, claims and controversies which they have attempted to compromise by the Settlement, and nothing contained herein shall be deemed to be an admission of any liability by any of the Parties, and except for this paragraph, the Settlement shall cease to be of any further force or effect.

11. Dismissal of Adversary Proceeding. Upon approval of the Settlement, payment of the amount of the Allowed Administrative Claim and Allowed Unsecured Claim, and confirmation of a plan of reorganization that is consistent with the terms of the Settlement (the "Plan"), Tracers shall seek dismissal of the Adversary Proceeding, with prejudice, through an appropriate pleading. TLO agrees to cooperate with Tracers in connection therewith.

12. Tracers and Tracers Related Parties Release of TLO and TLO Related Parties. Tracers, Terry Kilburn and Nancy Kilburn hereby release and forever discharge TLO, Carly Asher Yoost, Walter Yoost, Desiree Asher, Judith Redden, the Estate of Hank Asher, Technology Investors, Inc., and Technology Investors II, Inc., their respective agents, attorneys, representatives, employees, officers, directors, members, successors, assigns, parents, subsidiaries, affiliates, heirs, executors, administrators, and each of them, from any and all claims, demands, controversies, actions, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or unliquidated, in law or in equity, including, but not limited to, any avoidance actions pursuant to Chapter 5 of the Bankruptcy Code, from the beginning of the world to the date of execution of the Settlement except for the obligations created in this Settlement. The releases herein shall be binding upon any purchaser of TLO's assets, subsequently appointed trustee, plan administrator,

estate representative, official committee appointed by the Bankruptcy Court, including, but not limited to, the Official Committee of General Unsecured Creditors.

13. TLO and TLO Related Parties Release of Tracers and Tracers Related Parties. TLO, Carly Asher Yoost, Walter Yoost, Desiree Asher, Judith Redden, the Estate of Hank Asher, Technology Investors, Inc., and Technology Investors II, Inc. hereby release and forever discharge Tracers, Terry Kilburn and Nancy Kilburn, their respective agents, attorneys, representatives, employees, officers, directors, members, successors, assigns, parents, subsidiaries, affiliates, heirs, executors, administrators, and each of them, from any and all claims, demands, controversies, actions, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or unliquidated, in law or in equity, including, but not limited to, any avoidance actions pursuant to Chapter 5 of the Bankruptcy Code, from the beginning of the world to the date of execution of the Settlement except for the obligations created in this Settlement. The releases herein shall be binding upon any purchaser of TLO's assets, subsequently appointed trustee, plan administrator, estate representative, official committee appointed by the Bankruptcy Court, including, but not limited to, the Official Committee of General Unsecured Creditors.

14. Attorneys' Fees and Costs. Each Party shall be responsible for and bear all of its own costs and expenses incurred at any time in connection with the negotiation, execution and performance of the Settlement.

15. Entire Agreement. The Settlement and the exhibits hereto constitute the entire agreement among the Parties and supersedes all prior oral or written agreements, understandings, representations and warranties and courses of conduct and dealing among the Parties on the subject matter hereof.

16. No Admission of Liability. The Settlement represents the compromise of disputed claims and shall not in any way be considered an admission of liability by any person, firm, corporation, governmental unit, or other entity herein named or described.

17. Non-disparagement, non-solicitation, non-contact. The Parties shall not make any disparaging statement, orally or in writing, regarding each other. Neither of the Parties shall solicit, directly or indirectly, the employees of the other Party for employment (whether as an independent contractor or employee or in any other capacity) or for the purpose of encouraging that employee to leave the employment of the other Party. Neither Terry Kilburn nor Nancy Kilburn will contact Desiree Asher, Carly Asher Yoost, Judith Redden, or Walter Yoost, directly or indirectly, orally, in writing, or by email, any time after this Settlement is entered into. Desiree Asher, Carly Asher Yoost, Judith Redden, and Walter Yoost shall not contact Terry Kilburn or Nancy Kilburn directly or indirectly, orally, in writing, or by email, any time after this Settlement is entered into.

18. Counterparts and Electronic Transmission. The Settlement may be executed in one or more counterparts and the Parties may transmit the executed Settlement to each other

electronically, each of which will be deemed to be an original and all of which, when taken together, will be deemed to constitute one and the same agreement.

19. Binding Effect. The Settlement will inure to the benefit of and bind the respective predecessors, successors, permitted assigns and affiliates (as that term is defined in 11 U.S.C. § 101(2) of the Bankruptcy Code) of the Parties, including any subsequently appointed bankruptcy trustees or examiners which may be appointed in the Case.

20. Enforceability. If any provision of the Settlement is determined by a court having jurisdiction to be illegal, invalid or unenforceable under any present or future law, the remainder of the Settlement will not be affected thereby. Further, it is the intention of the Parties that if any provision is so held to be illegal, invalid or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible that is legal, valid and enforceable.

21. Amendments and Modifications to Settlement. The Settlement may be amended or modified only by a writing executed by all of the Parties. Neither the Settlement nor any of the provisions hereof can be changed, waived, discharged or terminated, except by an instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

22. Authority to Act. The persons executing the Settlement on behalf of the Parties represent and warrant that they have the full authority and power to sign on behalf of the party for whom they are signing and that their signature on the Settlement shall be binding on such party.

23. Neutral Interpretation. In the event any dispute arises among the Parties with regard to the interpretation of any term of the Settlement, or any agreement attached hereto, the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

24. Consultation with Counsel. The Parties each acknowledge that they have consulted with counsel and with such other experts and advisors as they have deemed necessary in connection with the negotiation, execution and delivery of this Stipulation, or have had an opportunity to so consult and have knowingly chosen not to do so.

25. Limitation on Relationship. The Settlement shall not be deemed or construed to create a partnership, tenancy in common, joint tenancy, joint venture, co-ownership or any other relationship aside from a continuing debtor-creditor relationship between TLO, on the one hand, and Tracers on the other.

26. Acknowledgement. The Settlement was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that the Settlement is in the best interests of the Parties.

27. The Bankruptcy Court retains jurisdiction to resolve any matters relating to the Settlement.

28. The Parties agree that any deadlines related to this dispute, the Adversary Proceeding and discovery therein are abated pending the Bankruptcy Court's approval of the Settlement.

**IN WITNESS HEREOF**, the undersigned, being duly authorized, have caused the Stipulation to be executed on the dates shown below:

*[signatures on the pages to follow]*

**Tracers Information Specialists, Inc.**

By: ______________________ COO

Date: 11-12-13

**Terry Kilburn**

By: ______________________

Date: 11-12-13

**Nancy Kilburn**

By: Nancy Kilburn

Date: 11/12/2013

**Carly Asher Yoost**

By: Carly Asher Yoost

Date: 11/13/13

**Walter Yoost**

By: ______________________

Date: 11.13.13

**Desiree Asher**

By: K. Desiree Asher

Date: 11/13/13

**Judith Redden**

By: ______________________________

Date: ______________________________

**The Estate of Hank Asher**

By: ______________________________

Date: 11/13/2013

**Technology Investors, Inc.**

By: ______________________________

Date: 11/13/2013

**Technology Investors II, Inc.**

By: ______________________________

Date: 11/13/2013

**Judith Redden**

By: Judith Redden

Date: 11/13/13

**The Estate of Hank Asher**

By: ______________________________

Date: ______________________________

**Technology Investors, Inc.**

By: ______________________________

Date: ______________________________

**Technology Investors II, Inc.**

By: ______________________________

Date: ______________________________

**TLO, LLC**

By: ______________________

Date: 11/12/13

**EXHIBIT "A"**

| |
|---|
| Cell Phone Files |
| Email Files |
| Professional License |
| Voters Files |
| Arrest Files w/ Photos |
| Civil Judgment Files |
| Criminal AOC/DOC |
| Criminal Sex Offenders |
| Criminal AOC/DOC Photos |
| Criminal Sex Offender Photos |
| Eviction Files |
| Real Estate Trulia/Other Real Estate Pictures |
| Real Estate Site Rapture MLS |
| Real Estate Zillow MLS Files |
| SSN Issuance Files |
| Tax Lien Files |
| Warrants Files |